## SIMS *v.* STATE.

Opinion delivered November 12, 1917.

1.  BRIBERY—SOLE GUILT OF BRIBE-TAKER.—Under Kirby's Digest, § 1602, the guilt of a bribe-taker depends solely upon his own corrupt intention, and the defendant can not escape conviction upon the ground that the bribe-giver had no criminal intent.

2.  CRIMINAL LAW—BRIBERY—PROOF OF CONSPIRACY.—In the prosecution of a State senator for the crime of bribe-taking, *held,* the testimony warranted the submission to the jury, of the question of a conspiracy.  A conspiracy need not be proved by positive testimony, but may be established by circumstances.

3.  BRIBERY—PROOF OF CONSPIRACY.—In a prosecution for the crime of bribe-taking, where a conspiracy existed among certain legislators and others to introduce certain bills, for the purpose of getting money from persons interested in the bills, it is proper for the jury to consider that fact in determining the guilt or innocence of the accused, and it is also proper for the jury to consider any of the statements of the participants in the conspiracy made during its progress.

4.  BRIBERY—STATE LEGISLATOR—INTENT.—In the prosecution of a State legislator for taking a bribe, the consideration for which

was that he "would kill a bill on the floor of the Senate," proof
that the accused was himself opposed to the bill, is no defense,
where the proof showed that he accepted the bribe.

5. Bribery—state legislator—receipt of money.—Defendant was
accused of receiving a bribe, in return for which he was to "kill
a certain bill, pending in the Senate," the evidence showed that
defendant and another senator B. received certain sums of money
from one M. in a dark alley in the city of Little Rock. *Held*,
that it was immaterial whether the money was handed by M.
directly to defendant or was first handed to B. and by B. handed
to defendant.

6. Bribery—state legislator—taking a bill beyond the juris-
diction of the legislature.—The acceptance of money by a
State senator for the purpose of inducing him to turn a bill over
to an interested party to take beyond the jurisdiction of the
Senate, constitutes bribery.

7. Appeal and error—multiplication of instructions.—The trial
court is not required to multiply instructions upon the same
point.

Appeal from Pulaski Circuit Court, First Division;
*Robert J. Lea*, Judge; affirmed.

*Joe T. Robinson, Thos. C. Trimble, Jr.,* and *Ross
Williams,* for appellant.

1. The court erroneously construed the statute un-
der which defendant was indicted in holding that the in-
tent of the giver was wholly immaterial and so instruct-
ing the jury. Kirby's Digest, § 1602; 65 Ill. 58; 47 La.
Ann. 977; 23 Col. 300; 47 Pac. 375; 18 Col. 373; 38 Mich.
313.

2. The instruction No. 10 as to conspiracy was not
justified by the evidence and was prejudicial. 87 Ark.
34; 95 *Id*. 460.

3. No. 11 was confusing and calculated to mislead.

4. It was error to instruct the jury that it was im-
material whether the money was given to defendant by
McGraw or Burgess as was done in No. 14, and No. 18
was upon the weight of evidence. 171 Mo. 1; 2 Phillip-
ine, 616; Hines, Par. Prec., vol. 4, § § 3470-4-5; Cushing,
Law of Leg. Ass., par. 2396.

5. It was error to refuse No. 10, asked by defendant, that a corrupt intent was essential.

6. The argument of the prosecuting attorney was unfair and prejudicial. 2 R. C. L. 416; 31 Tex. Cr. 530; 48 L. R. A. 641, and note; 22 Ga. 211; 70 Ark. 306; 75 *Id.* 210; 72 *Id.* 138; 58 *Id.* 353; 110 Ala. 48; 54 Vt. 83; 46 L. R. A. 641-2, notes and cases cited.

*John D. Arbuckle,* Attorney General, and *T. W. Campbell,* Assistant, for appellee; *M. E. Dunaway* and *Lewis Rhoton,* of counsel.

1. The court properly construed the statute (act 210, Acts 1909, Kirby's Digest, § 1602). It is declaratory of the common law. 29 Ark. 299; 1 Russell on Crimes, 154.

The gist of the crime is the guilty intent of the bribetaker. 47 La. Ann. 996-7; 135 Mass. 530; 4 R. C. L. 178, § 5; 9 C. J. 404, § 4; 84 Pac. 364; 73 Minn. 150-9; 70 Tex. Cr. 634. The intent of the giver was immaterial, and it was not error to so hold. Cases *supra;* 47 La. Ann. 977, 996.

2. Instruction 12 correctly states the law. 105 Mich. 80; 99 N. E. 1125; 86 N. J. L. 525; 158 S. W. 288; 8 R. C. L. 128, § 105; 156 U. S. 604; 165 *Id.* 300; 86 N. J. L. 525.

3. The evidence justified the giving of instruction No. 10 as to conspiracy. 77 Ark. 444; 105 *Id.* 72; 81 *Id.* 173.

4. There was no error in giving No. 11. It was not made a ground in the motion for new trial. 80 Ark. 345; 95 *Id.* 363; 101 *Id.* 120. Nor is there error in No. 14.

5. There was no error in giving No. 18. The objections are not well founded. Const., art. 5, § 22; 72 Ark. 565. But if error, it was not prejudicial. Kirby's Digest, § § 2605, 2619.

6. It was not error to refuse No. 10, asked by defendant. It was conflicting. 102 Ark. 627; 95 *Id.* 506; 89 *Id.* 213; 94 *Id.* 202; 83 *Id.* 202; 92 *Id.* 71; 94 *Id.* 511; 97 *Id.* 180. The principle of law had been fully covered by

No. 3, and courts are not required to duplicate instructions. 103 Ark. 352; 101 *Id.* 120.

7.   The remarks of the prosecuting attorney were withdrawn.   They were provoked by objectionable argument on the part of counsel for defendant.   75 Ark. 350; 93 *Id.* 66, 581.   The jury were properly admonished.   65 Ark. 475; 75 *Id.* 246; 67 *Id.* 365; 82 *Id.* 64; 84 *Id.* 16; 88 *Id.* 602; 105 *Id.* 608; 84 *Id.* 131, and many others.

McCULLOCH, C. J.   Appellant Sims was a senator in the General Assembly of Arkansas, which convened in regular session in January, 1917, and he is charged with the crime of bribery, alleged to have been committed by accepting from one John E. McGraw the sum of $900 to influence his official action with respect to a bill then pending in the Senate, designated as Senate Bill No. 302, providing for the regulation and taxation of trading stamps or coupons.

A demurrer to the indictment was presented on the ground that it was not alleged that McGraw paid the money to appellant with the corrupt intent to influence the action of the latter on the pending bill.   The court overruled the demurrer, and in submitting the case to the jury gave instructions to the effect that in determining the guilt or innocence of the defendant it was immaterial whether or not McGraw paid the money with the corrupt intention to influence appellant's official conduct. The court told the jury that "the whole question being what was the intention and motive of the defendant in receiving said money, if you find from the evidence that he did receive it."   The evidence is undisputed that McGraw did not pay the money with intent to influence appellant's official conduct, but, on the contrary, McGraw was a detective brought here by the prosecuting attorney to discover the operations of corrupt members of the General Assembly, or those believed to be corrupt, and that his offer to appellant and the payment of the money was a part of his plan to entrap appellant and bring to light corrupt practices on his part.   McGraw passed under the

assumed name of McGarvey. On the other hand, the proof adduced by the State was sufficient to show that appellant accepted and received the sum of money named for the purpose of influencing his official conduct with respect to the bill mentioned in the indictment, which was then pending before the Senate.

(1) The question then is squarely presented whether, under the statutes of this State, the guilt of a bribe-taker depends solely upon his own corrupt intention, or whether it is an essential element of his guilt that the bribe-giver should also have acted with a guilty intention of influencing official action in giving the bribe. The rule at common law was that either the bribe-giver or the bribe-taker was indictable for bribery upon his own guilty participation in the transaction regardless of the corrupt intention of the other. 1 Russell on The Law of Crimes (7 Div.), p. 627; 3 Wharton's Criminal Law, § 2215; 9 Corpus Juris, p. 404; 4 Ruling Case Law, p. 178.

Does the statute of this State on the subject change the common law definition? The statute is, as far as applicable to the present case, correctly epitomized by counsel for appellant in their brief as follows:

"If any person shall, directly or indirectly, promise or offer to give, or cause to be promised, offered or given, any money * * * to any member of the General Assembly of the State of Arkansas, after his election as such member, * * * with intent to influence his vote or decision on any question, matter, cause or proceeding which may then be pending or may by law * * * be brought before him in his official capacity * * * and shall be convicted thereof, such person so offering, promising or giving * * * any such money, * * * and the member * * * who shall in any wise accept or receive the same or any part thereof, shall be liable to indictment." Kirby's Digest, § 1602.

The statute applies to all public officers and persons performing public functions under the laws of the State where a bribe is given or received to influence their official conduct. *State* v. *Bunch,* 119 Ark. 219.

It is argued that the use of the word "and" in joining the bribe-receiving official with the bribe-giver necessarily makes the guilt of the former depend upon the guilty intention of the latter. We think that that is not a reasonable interpretation of the statute, and that it would lead to illogical results. For instance, if that interpretation were correct, then an official by receiving money might be guilty of a crime without any guilty intention or actual participation in the guilt of the bribe-giver, whereas the obvious purpose of the lawmakers in framing this statute was to follow the common law rule and to make either of the parties to such a transaction guilty who gives or receives money to influence official action regardless of the intention of the other in giving or receiving the money. Similar statutes in other States have been so construed. In the State of Massachusetts the statute on the subject of bribery is similar to the statute in this State, but the guilt of the bribe-giver and of the bribe-taker is declared in separate sections. The Massachusetts court, in construing the statute, held that the guilt of each party to the transaction depended upon his own guilty intention. *Commonwealth* v. *Murray,* 135 Mass. 530. The California statute is also similar, except that it, too, defines the offense of the respective participants in different sections, and the appellate court of that State held that "the guilt of a State senator receiving a bribe on the understanding that his official conduct should be influenced thereby is not affected by the absence of intent to bribe on the part of the persons furnishing the money which was paid to him." *People* v. *Bunkers,* 2 Cal. App. 197, 84 Pac. 364. The Louisiana statute is almost identical with our statute on this subject, and the Supreme Court of that State decided that an official who accepted a bribe was guilty where there was no guilty intention on the part of the giver. *State* v. *Dudoussat,* 47 La. Ann. 977. Our conclusion, therefore, is that the indictment was sufficient in charging the guilty intention of appellant without also alleging an intention on the part of McGraw to influence appellant's official action. The court was cor-

rect in so instructing the jury. Since the statute denounces the act of a public official in receiving a bribe for the purpose of affecting his official conduct it is no defense that the bribe was given solely for the purpose of entrapping him and exposing his guilt.

It is contended that one of the instructions given by the court (No. 12) told the jury in substance that appellant might be found guilty if neither the giver nor the receiver of the bribe had a corrupt intention, but we do not think the instruction bears that interpretation. Instruction No. 12 relates entirely to the subject of the absence of guilty intention on the part of McGraw, and when read in connection with the other instructions given by the court telling the jury that the case turned upon the "intention and motive of defendant in receiving said money," it can not be said that it permitted the jury to find appellant guilty even though he had no corrupt intention in receiving the money.

Error of the court is assigned in giving instruction No. 10, which reads as follows:

"You are instructed that if you find from the evidence that the defendant and other senators, and other persons had entered into a conspiracy and agreement to introduce and have introduced in the Senate, bills for the purpose of inducing and forcing money to be paid for their passage or defeat, then it is proper for you to take this fact into consideration in determining the guilt or innocence of the defendant, and it is proper for you to consider evidence of any statements made by any of the persons connected with such agreement and conspiracy, if any during the existence of such agreement and conspiracy."

(2-3) The contention is that there was no evidence to support the theory that appellant entered into a conspiracy with others to introduce bills for the purpose of extorting money from interested parties to have them defeated. The evidence adduced by the State tended to show that one Powell occupied a room at one of the leading hotels in the city during the session of the Legisla-

ture, to which several senators habitually resorted; that Powell prepared bills known as ''revenue-raisers,'' meaning bills that were intended to be used in extorting money from interested parties, and had them introduced for that purpose, and that appellant was present in Powell's room with certain other senators when this particular bill was handed to a senator to be introduced, and that it was intended as one of the bills to be used in extorting money from others. Burgess, another Senator, who is also under indictment for receiving money from McGraw at the time appellant is charged with receiving the bribe, testified that he went to Powell's room with appellant and found numerous Senators there, three or four of whom he mentioned in his testimony by name, and that Powell discussed there with the Senators present, including appellant, these various bills that were intended ''to raise revenue.'' Powell handed over to one of the Senators a bill which he declared, according to the testimony of Burgess, was ''the bill that would bring the persimmons down.'' Powell handed this particular bill, that is to say, the one concerning which appellant is alleged to have been bribed, to Burgess, who agreed to introduce it, and who did in fact subsequently introduce it in the Senate. Burgess testified that the conversation between Powell and the other Senators was carried on in the presence of appellant. In fact, it is fairly inferable from the testimony of Burgess that appellant was one of the participants in the conference between Powell and the Senators concerning the introduction of the bills for the wrongful purposes mentioned above. In response to a direct question whether or not appellant was present when the conversation took place, Burgess replied that he was, and in response to another question the witness stated that appellant was present when Powell made the statement concerning the bill that was to ''bring the persimmons down.'' The testimony warranted the submission of the question of conspiracy, which need not be proved by positive testimony, but may be established by circumstances. *Chapline* v. *State,* 77 Ark. 444; *Butt* v. *State,* 81 Ark. 173.

If the conspiracy existed, it was proper, as stated by the court in the instructions, for the jury to consider that fact in determining the guilt or innocence of appellant, and it was also proper for them to consider any of the statements of the participants in the conspiracy made during its progress, for if the testimony adduced by the State be accepted as true, appellant entered into the fraudulent design of introducing bills in the Legislature to use in extorting money from interested parties, and that the transaction now under consideration occurred pursuant to that design. Bill No. 302 was introduced by Senator Burgess, and was referred to a committee, of which appellant was chairman. The committee reported the bill back to the Senate with the recommendation that it not pass, and while that was the status of the bill the evidence shows that McGraw approached appellant and offered him money to kill the bill on the floor of the Senate, which offer appellant and Burgess both accepted. The money was paid over to Burgess and Sims by McGraw, according to the testimony, at night in an alleyway near the business portion of the city of Little Rock. A package containing $1,000 was delivered to Burgess and another package containing $900 was handed to appellant, McGraw having previously handed him $100. Appellant denied that he accepted any money or agreed to do so, but the State's version of the matter has been accepted by the jury and the evidence was sufficient to justify that conclusion.

(4)    Another instruction (No. 11) was objected to on the ground that it constituted an instruction on the weight of the evidence by singling out one of the circumstances and presenting it to the jury separately. We have held that it is not good practice to single out a particular circumstance in an instruction to a jury, but that it does not constitute reversible error for the court to do so. *Hogue* v. *State,* 93 Ark. 316. The instruction in question is in no sense one upon the weight of the evidence, but it merely states, in effect, the proposition of law that the fact that appellant claimed to be opposed to the bill in question did

not constitute a defense to the charge of bribery if he received the money for the purpose of being influenced as to his vote or decision in any way affecting the bill. That is a correct statement of the law. The fact that appellant had declared himself to be opposed to the bill might be considered as a circumstance tending to rebut the contention that he accepted a bribe, but if the proof shows that he did in fact accept a bribe, then it constitutes no defense that he had previously set himself up as being opposed to the bill.

(5)   Again it is contended that the court erred in giving the following instruction:

"No. 14.   You are instructed that if you find from the evidence beyond a reasonable doubt that the defendant received money as charged in the indictment, it is wholly immaterial whether the money was handed directly to the defendant by the said John E. McGraw, or was handed to the witness Burgess, and was by Burgess handed to the defendant."

The evidence adduced by the State was sufficient to show that the money was paid by McGraw directly to appellant, but the testimony shows that McGraw, Burgess and appellant were together in the alley, and that the money came from McGraw, and it was correct to say, as stated in the instruction, that it was immaterial whether the money was handed by McGraw directly to appellant or was first handed to Burgess, who in turn handed it over to appellant. It is undisputed that if there was any money passed at all it came from McGraw, and that if Burgess handed over any money to appellant it was money that had been handed to him by McGraw in appellant's presence. It is urged in the same connection that the proof constituted a variance from the allegations in the indictment in that it is alleged in the indictment that the money was paid over by McGraw. The evidence is abundant, however, to show that McGraw in fact handed the money directly to appellant, but, even if it was first handed to Burgess by McGraw and then turned over to appellant by Burgess in McGraw's presence it would not constitute a

variance from the allegations in the indictment. The only real issue is whether or not appellant received the money at all. He denies that it was given to him, but on the other hand, the testimony adduced by the State shows money furnished by McGraw was in fact paid over to him according to previous agreement to influence his official act, and that at the time the money was paid he delivered to McGraw the original bill, which he had procured from the secretary of the Senate.

(6)   Instruction No. 18 was objected to and the ruling of the court in giving it is also assigned as error. It reads as follows:

"You are instructed that when a bill has been introduced in the Senate of the General Assembly and has been referred to a committee to act and report upon it and the committee has acted and reported upon it, that it do or do not pass, and that before any further action is taken the bill is extracted from the Senate and placed beyond the control of the Senate or any of its officers, it makes it impossible for the Senate to consider such bill for the purpose of either passing or defeating it."

That instruction was not literally correct in the unqualified statement that it was impossible for the Senate to consider a bill "either passing or defeating it" after it had been taken from the Senate and placed beyond the control of any of its officers. This instruction was based upon testimony which showed that part of the plan was for the bill to be turned over to McGraw so that he could take it out of the State with him. The Senate would not have been powerless, under those circumstances, to proceed further with the consideration of the bill, for a legislative body would necessarily be clothed with power under those circumstances to restore a lost or stolen bill. It is correct, however, to say that after the bill itself had been carried beyond the reach of the Senate it could not either defeat it or pass it while that status existed. In other words, it is true that the absence of the bill from the jurisdiction of the Senate constituted an obstacle which prevented further action on it until it could be restored, or a

copy substituted, and that the acceptance of money by a Senator for the purpose of inducing him to turn a bill over to an interested party to take beyond the jurisdiction of the Senate constitutes bribery. The instruction was, therefore, correct only to the extent that it expressed that idea to the jury, but, though it was incorrect to tell the jury further that that disposition of the bill absolutely defeated its further consideration, it could not have had any prejudicial effect. The important thing for the jury to know was that the acceptance of money by appellant to induce him to extract the bill from the Senate and turn it over to McGraw was such official misconduct as would constitute bribery, and it was wholly immaterial that the court incorrectly told the jury that that would defeat the final passage of the bill.

The court refused to give the following instruction at appellant's request:

"Even though you believe from the evidence that McGarvey gave defendant nine hundred dollars, or any other sum, to defeat or kill the bill, No. 302, in the committee, and further find that it had already been defeated in the committee, and that McGarvey knew at the time that it had been so defeated, and was not thereafter to be acted on by the committee, and did not make the gift with the intent to influence his vote or decision, and that defendant did not receive it or accept it with intent that it should influence his vote or decision, then you should find the defendant not guilty."

(7) The instruction is conceded to be poorly worded, but it is insisted that it ought to have been given because it stated the one essential thing, that appellant could not be found guilty if he did not receive the bribe with intent that it should influence his official conduct. That statement of the law, however, was fully expressed to the jury in other instructions given by the court. In instruction No. 3, which set forth in detail the material allegations of the indictment, one was stated to be that the accused must have received the money "for and by way of a bribe to influence his vote or decision upon a certain

bill, towit: Senate Bill No. 302, then pending in the Senate;" and in instruction No. 5, the court told the jury that the whole question of the case was "what was the intention and motive of the defendant in receiving said money, if you find from the evidence that he did receive it." It was unnecessary for the court to multiply instructions, and this particular instruction might have misled the jury into the belief that appellant was not guilty of accepting the bribe merely because he had previously opposed the bill in the committee and had reported it adversely.

The last assignment of error relates to improper argument of the prosecuting attorney, but it appears from the record that the prosecuting attorney withdrew the improper remarks and that the trial judge very emphatically admonished the jury to pay no attention to those remarks. It can not be said that the effect of the remarks was necessarily so harmful that no action of the court could eradicate the same. We must assume that the jury heeded the emphatic admonition of the court and disregarded the improper remarks of counsel, and considered the case solely upon the testimony and the instructions of law given by the court.

We find no prejudicial error in the record, and the judgment of conviction is, therefore, affirmed.