(No. 33158.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* ELMER LYONS, Plaintiff in Error.

*Opinion filed October 25, 1954—Rehearing denied Dec. 20, 1954.*

CHESTER THOMPSON, of Bloomington, and EDWIN C. MILLS, of Lincoln, (KEITH CAMPBELL, of Bloomington, of counsel,) for plaintiff in error.

LATHAM CASTLE, Attorney General, of Springfield, and CLIFFORD N. COOLIDGE, State's Attorney, of Bloomington, (FRED G. LEACH, GEORGE W. SCHWANER, JR., and WENDELL E. OLIVER, of counsel,) for the People.

Mr. JUSTICE KLINGBIEL delivered the opinion of the court:

Elmer Lyons was convicted in the circuit court of McLean County on a charge of bribery, and was sentenced to imprisonment in the penitentiary for not less than two nor more than four years. He brings the cause here for review by writ of error.

Plaintiff in error, hereinafter called defendant, was a sergeant on the police force of the city of Bloomington, having been assigned to its vice squad. In the early part of 1953 he became acquainted with one Harry Jennings, who operated a house of prostitution in the city. A few months later Jennings talked to the chief of police, and complained that he had to pay defendant $200 per month in order to operate. The chief wanted some verification of the accusation, and an arrangement was made whereby he and a police commissioner were to conceal themselves on the premises in question and observe the payment of money to defendant. Accordingly, on April 16 they entered the basement of the house, where there was a well-lighted room furnished with a table and several chairs. Adjoining this room was a furnace room, the door to which had a slot cut in it about six to eight inches long and two inches wide. Shortly after the commissioner and the chief of police arrived a telephone call was received at the house, and Jennings was informed that defendant was calling. Sometime later footsteps were heard on the floor above, and the two witnesses retired behind the door leading into the furnace room, which was dark. Looking through the slot in the door, they observed defendant come into the room and seat himself at the table with Jennings. The latter complained to defendant about having to make such large payments to stay in business, and asked defendant what he did with all the money. Defendant replied that he did not keep all of it, but had to pay over half to the night captain. Upon being questioned by Jennings as to how it would be

under the new city administration, defendant told him he had nothing to worry about for three or four months. During the conversation Jennings had counted out $200 in currency and placed it on the table. Defendant then took the money, put it into his pocket, and left the premises.

It is undisputed that Jennings's payment was made pursuant to a previous arrangement with police authorities, and for the sole purpose of catching defendant in an illegal act. Defendant contends that under the language of the statute the offense is not complete unless both parties to the transaction act from a corrupt motive; and that if one pays or accepts money with the intention of bringing the other to justice, the latter cannot be convicted of bribery. Although such is the rule announced in *People* v. *Peters*, 265 Ill. 122, relied on by defendant, we think it can no longer be justified, either by reason or by the language of the statute. In the *Peters case* the proprietor of a saloon was arrested for keeping and operating a slot machine. He approached the State's Attorney with a proposition to have the case "fixed up," and, after making several such attempts, was told to come to the latter's office. The State's Attorney then arranged to have two witnesses concealed in his office at the time of the appointment. Peters, the saloon keeper, appeared at the appointed time, and, after some conversation about the amount required to "fix it up," paid $20 to a third person designated by the State's Attorney. In reversing his conviction for bribery this court reasoned that by the language used in the statute the legislature intended to require the acts of two parties in order to constitute the crime of bribery; and that since Peters's offer was not accepted with a corrupt motive it could constitute only an attempt to bribe. The statute declares, in effect, that "Whoever corruptly, directly or indirectly, gives any money or other bribe," to an officer, with intent to influence his act in any matter which may be brought before him in his official capacity, or to cause

him to perform any duty otherwise than is required by law, "the person so giving, and the officer so receiving any money * * * with intent or for the purpose or consideration aforesaid, shall be deemed guilty of bribery, and shall be punished by confinement in the penitentiary for a term not less than one year nor more than five years." (Ill. Rev. Stat. 1951, chap. 38, par. 78.) A reasonable construction of the provisions in the light of their evident purpose requires that any person who corruptly engages in such a transaction is guilty of bribery, regardless of the motive of the other party thereto. The opposite conclusion reached in the *Peters case* is not in accord with the basic principles of our criminal law, and the decision in that case is hereby overruled. The guilt of an accused is not measured by the intent of another but by his own intent. In the absence of clear and explicit statutory provisions we cannot ascribe to the legislature an intention to depart from this salutary principle, and to require a mutual criminal intent before either the giver or the accepter can be found guilty.

The question has been decided adversely to the present contention under similar statutes in other States. In *Williams* v. *State,* 178 Wis. 78, 189 N.W. 268, the statute provided, in so far as is material, that "Any person who shall corruptly give, offer or promise to any * * * officer of the state * * * any gift or gratuity, or any money * * * with intent to influence his vote, opinions, judgment, or action * * * and any such officer who shall corruptly accept or receive any such gift, gratuity, money, * * * under any agreement or understanding that his vote, opinion, judgment or action should be thereby so influenced shall be punished," etc. The evidence showed that defendant had corruptly paid money to a police officer for the purpose of influencing his official conduct, but that the officer accepted the bribe only for evidentiary purposes. To reverse his conviction defendant contended it was necessary for a conviction that both the officer and the bribe-

giver be guilty of a corrupt intent. In rejecting the contention the court pointed out that a correct construction of the statute indicates the offense of the giver and of the taker are distinct in their nature. The court observed: "Any person may be guilty of bribing a public officer, although the officer had no corrupt purpose or intent, the guilt of the briber being measured by his own intent, and not by the intent of the accepter of the bribe."

In *Sims* v. *State*, 131 Ark. 185, 198 S.W. 883, the defendant, a senator in the Arkansas General Assembly, accepted from one John E. McGraw the sum of $900, purportedly paid to influence defendant's official action with respect to a bill then pending in the Senate. McGraw was a detective brought there by the prosecuting attorney to discover the operations of corrupt members of the General Assembly, and his offer and payment to defendant were part of a plan to entrap defendant and bring to light corrupt practices on his part. The evidence was undisputed that McGraw did not pay the money with intent to influence defendant's official conduct. The statute provided in substance that if any person shall offer, promise, or give money to a member of the General Assembly with intent to influence his official vote or decision, "such person so offering, promising or giving, * * * any such money, * * * and the member * * * who shall in any wise accept or receive the same, or any part thereof, shall be liable to indictment." The question was presented whether the guilt of a bribe-taker depends solely upon his own corrupt intention, or whether it is an essential element of his guilt that the bribe-giver should also have acted with a guilty intention of influencing official action. The court referred to the common-law rule that either the bribe-giver or the bribe-taker was indictable for bribery upon his own guilty participation in the transaction, regardless of the corrupt intention of the other, and concluded: "the obvious purpose of the lawmakers in framing this statute was to

follow the common law rule and to make either of the parties to such a transaction guilty who gives or receives money to influence official action regardless of the intention of the other in giving or receiving the money." (See, also, *Robinson* v. *United States,* 32 Fed. 2d 505, (C.C.A. 8th, 1928;) *State* v. *Vallee,* (Maine) 12 Atl. 2d 421; *Minter* v. *State,* 70 Texas Cr. 634, 159 S.W. 286.) We conclude that a similar construction must be given to the Illinois statute; and that to constitute the crime of bribery thereunder, there need not be mutual intent on the part of both the giver and the accepter. It is enough that the person accused had the guilty intent.

It is next contended that the court erred in refusing three instructions offered by defendant. The first two of such instructions in substance directed the jury to find defendant not guilty unless they believed Jennings had a corrupt intent in giving the money to defendant. It is apparent from what we have already said that these instructions do not correctly state the law, and were properly refused. The third refused instruction told the jury that the State has the burden of proving guilt, and that unless they believe it has done so beyond all reasonable doubt they should find defendant not guilty. This instruction is substantially the same as defendant's given instructions "B" and "C." There is no right to have the applicable rules of law repeated in various forms by different instructions. The court did not err in refusing the instruction. Defendant further complains of instruction No. 10, given at the request of the People, on the ground that it is too long and embodies factors not in evidence. This instruction defines the offense in the language of the statute, and unquestionably includes much that is not applicable to the facts in this case. However, it is not necessarily error to give such an instruction. Whether an instruction in the language of the statute is misleading depends upon the facts of the particular case. (*People* v. *Kessler,* 333 Ill. 451.) Defendant has devoted

no argument to his contention, nor has he shown in what respect the jury was misled. Under the circumstances of this case it is clear that no error has been shown in the giving of this instruction.

Defendant next insists that the verdict is against the weight of the evidence, and argues that Jennings's testimony should have been received with caution because he was an "accomplice;" that in the light of evidence tending to show the chief of police had permitted houses of prostitution to operate, his testimony was not worthy of credit; and that the commissioner might easily have been mistaken as to what he overheard defendant say at the time of the transaction in question. In further support of the present contention defendant relies upon his own testimony that he had received only $100 and accepted it only as a contribution to the Policemen's Benevolent Protective Association, pursuant to a previous request by its advertising manager to see what he could do about obtaining contributions. This version was corroborated to some extent by the advertising manager, who testified in effect that in July, 1953, defendant turned over $100 to him as a contribution from Jennings to the association. It is clear, however, that defendant's contention cannot be sustained. The record contains ample evidence to support the conviction. The matters relied upon by defendant concern merely the credibility of witnesses and conflicts in testimony. It is the function of the jury to determine the credibility of the witnesses and the weight of their testimony, and where the evidence is conflicting this court will not substitute its judgment for that of the jury.

Defendant next complains that the court erred in admitting testimony of one Earl Phillips, an adverse character witness on behalf of the State. The witness testified that he was acquainted with defendant's general reputation for truth and veracity, and that it was bad. On cross-examination he stated that it was his own opinion, and

the court struck the testimony. Upon redirect examination the witness again testified to a bad reputation of defendant, and upon re-cross-examination again indicated his answer was based on personal opinion. On motion of defendant's counsel the court then directed the jury to disregard "the entirely personal opinion" of the witness. The law is well settled that the character of an accused is provable only by evidence of general reputation, and that the personal opinion of the witness is not competent evidence. (*People* v. *Willy,* 301 Ill. 307.) The court in the present case properly directed the jury to disregard the objectionable testimony and defendant has shown no prejudicial error.

We have considered the other arguments of defendant and find them to be without merit. Upon careful examination of the evidence and rulings of the court we are satisfied that defendant has had a fair trial and was properly found guilty of bribery.

The judgment of the circuit court of McLean County is affirmed.

*Judgment affirmed.*