(No. 37398.—

The People of the State of Illinois, Defendant in Error, *vs.* Pearlie Hines, Plaintiff in Error.

*Opinion filed January 22, 1964.*

James V. Tufano, of Chicago, (George E. Batten, of counsel,) appointed by the court, for plaintiff in error.

William G. Clark, Attorney General, of Springfield, and Daniel P. Ward, State's Attorney, of Chicago, (Fred G. Leach and E. Michael O'Brien, Assistant Attorneys General, and Elmer C. Kissane and Richard T. Buck, Assistant State's Attorneys, of counsel,) for the People.

Mr. Chief Justice Klingbiel delivered the opinion of the court:

The defendant, Pearlie Hines, was found guilty by a jury in the criminal court of Cook County of the sale and dispensing of narcotics. He was sentenced to a term of

not less than 10 years nor more than life imprisonment in the penitentiary. For a reversal of the trial court judgment the defendant urges (1) that the trial court erroneously instructed the jury, (2) that the State had no right to nolle pros count II of the indictment charging possession of narcotics, (3) failure to prove that the white powder seized was in fact a narcotic drug, (4) failure to establish the defendant's guilt beyond a reasonable doubt and (5) prejudicial argument by the prosecution.

From the evidence it appears that at approximately 6:00 o'clock in the evening of September 12, 1961, police officers Bingham and Kearns came to the apartment of Earl Shelby, a known narcotic addict. Shelby, together with officers Bingham, Kearns and Dura, then went in an unmarked police car to the area of 32nd Street and Indiana Avenue in Chicago. Shelby had previously been searched and all the money on his person was removed. He was then given $10 consisting of one $5 bill and five $1 bills, the serial numbers of which had been copied down by the officers and receipted for by Shelby. Shelby left the police car at 32nd and Indiana, walked a block east to 32nd and Prairie where he met defendant, Pearlie Hines, and informed him that he wanted some narcotics. The defendant replied that he couldn't get anything for him as "Twin" had the key to the room. The defendant then saw James Smith across the street and when Smith approached defendant inquired of him if he had seen "Twin". Smith replied that he had seen "Twin" but that the police were in the neighborhood. Shortly thereafter "Twin" walked up to the group and defendant asked him where he had been. "Twin" (identified as John Davis) stated that he had been walking around as there had been police in the neighborhood. The defendant then informed "Twin" that Shelby wanted to "cop", meaning to purchase some narcotics. The four men (Smith, Davis, defendant and Shelby) went to a basement apartment at 3157 South Prairie. Officer Bingham, who had left

the automobile shortly after Shelby, witnessed the meeting of the group and saw them enter this building.

Shelby testified that upon reaching the apartment door Davis gave the defendant a key and the defendant opened the door. After entering, defendant asked Shelby what he wanted to buy. Some white powder and strips of tinfoil were on the table. Shelby said he had $10 to spend and defendant told Davis to give him what he wanted. Before doing so defendant "cooked" some of the powder by mixing it with water and heating it in a bottle cap. Defendant had stated that some of the "stuff" in the past had not been too good. Defendant drew some of the substance up into an eye dropper and with a needle attached thereto gave himself an injection. After the injection he stated that this "stuff" was better. Shelby was then also given an injection and testified that, from his experience as a narcotic addict during the past 8 or 9 years, he knew it was narcotics from the effect it produced on him. Shelby gave the $10 to defendant who in turn gave him two "nickel bags" costing $5.00 each and containing white powder. When Shelby left the apartment two strangers arrived. Shelby returned to the police car and handed the two tinfoil packages to the officers. Officer Bingham then performed a field test and received a result indicating the powder to be narcotic. The three officers, accompanied by Shelby, went to the apartment and arrested defendant, "Twin" (John Davis), James Smith and two others. When defendant was searched one of the listed dollar bills was found on his person. A chemist testified that he had performed a qualitative test on the substance and found it to be heroin.

At the State's request the court gave the jury the following instruction: "The court instructs the jury in the language of the statute that it is unlawful for any person to manufacture, possess, have under his control, sell, prescribe, administer, dispense or compound heroin." It is defendant's contention that since the State nolle prossed the

possession count of the indictment the giving of such an instruction constituted prejudicial error because the jury could have found him guilty of possession under the instruction although it may have believed him not guilty of the other two counts. It appears that the defendant failed to object to the giving of this instruction at the time of trial. This would ordinarily constitute a waiver of his right to object on review. (*People* v. *Minor*, 20 Ill.2d 496.) Irrespective of this waiver however this court declared in *People* v. *Galloway*, 28 Ill.2d 355 at 363: "However, as pointed out in *People* v. *Lyons*, 4 Ill.2d 396, and *People* v. *Kessler*, 333 Ill. 451, it is not necessarily error to give such an instruction, and whether or not an instruction in the language of a statute is misleading depends upon the facts and circumstances of the particular case. Here, the other instructions given to the jury, and the verdict returned, make it obvious that the jurors were in no manner misled by this instruction." Under the facts and circumstances in the case at bar, we are of the opinion that the jurors could not have been misled by the instruction.

It is contended by defendant that he could be placed in double jeopardy by the State's nolle prossing of count II. The jury had already been impanelled and evidence heard prior to the possession count being nolled. The claim of the possibility of double jeopardy is without merit. Defendant could not be subsequently reindicted and retried for the nolled charge.

It is next contended by defendant that because the chemist performed a qualitative but not a quantitative test on the heroin, the exact amount in each of the packages was not determined. Therefore, he argues that the white powder was not proved to be a narcotic. There was no claim by defendant at the time of trial that the white powder was for medicinal purposes. In *People* v. *Palumbo*, 5 Ill.2d 409 at 416, we pointed out that section 8 (now section 12) of the Uniform Narcotic Drug Act exempts cer-

tain preparations. The act does not apply to the "Prescribing, administering, dispensing or selling at retail of any medicinal preparation that contains * * * not more than one-eighth of a grain of heroin * * *." In *Palumbo* we pointed out that there was no suggestion in the record that the substance sold was a "medicinal preparation" and that section 21 (now section 39) of the act provides that in any proceeding for the enforcement of the act "it shall not be necessary to negative any exception, excuse, proviso, or exemption, contained in this act and the burden of proof of any such exception, excuse, proviso or exemption, shall be upon the defendant." Ill. Rev. Stat. 1961, chap. 38, par. 22—44.

Defendant's contention as to the lack of the required proof is based on his claim that because the witness Shelby is a confirmed dope addict and informer his testimony is therefore unbelievable. He also claims that because other persons were also involved in the transaction defendant might not have personally sold the narcotics to Shelby. In *People v. Norman,* 28 Ill.2d 77, it was declared that although the testimony of a narcotics addict is scrutinized with caution, his testimony may be sufficient to sustain a conviction if credible under the surrounding circumstances. The testimony of the informer, Shelby, was amply supported and corroborated by the testimony of the officers and the evidence of finding the marked dollar bill on the person of the defendant. The fact that defendant did not have all of the marked money on his person at the time of the arrest is of no consequence. The circuity of the transfer of the money and narcotics cannot alter the substance of the transaction. *People v. Witherspoon,* 28 Ill.2d 290.

Finally, we have examined the remarks of the prosecution during argument. While certain portions appear to have been improper, in view of the clear and convincing evidence of guilt we cannot say that such remarks prejudicially influenced the jury or that the verdict could have

been otherwise had the remarks not been made. See *People v. Naujokas,* 25 Ill.2d 32.

The judgment of the criminal court of Cook County is affirmed.

*Judgment affirmed.*