**People of the State of Illinois, Defendant in Error, v. Eddie Frank (Impleaded), Plaintiff in Error.**

Gen. No. 49,583.

First District, First Division.

July 27, 1964.

August A. Grundei and Vincent P. Reilly, of Chicago, for plaintiff in error.

William G. Clark, Attorney General, of Springfield (Daniel P. Ward, State's Attorney, of Chicago, Fred

G. Leach and E. Michael O'Brien, Assistant Attorneys General, Elmer C. Kissane and Richard T. Buck, Assistant State's Attorneys, of counsel), for defendant in error.

MR. JUSTICE BURMAN delivered the opinion of the court.

The defendant, Eddie Frank, and Edward Washington, a codefendant, were charged with the unlawful sale of narcotic drugs in violation of the Uniform Narcotic Drug Act (Ill Rev Stats c 38, § 22–3) in an indictment filed in the Criminal Court of Cook County. Washington was found not guilty and Frank was found guilty after a joint bench trial and sentenced to the Illinois State Penitentiary for a minimum period of twelve years and a maximum period of fifteen years. The defendant's grounds for seeking a reversal of his conviction are as follows:

> That the defendant, Eddie Frank, was not proven guilty beyond a reasonable doubt in that (1) the trial court could not logically have found defendant guilty where his testimony and that of his codefendant so contradicted that of the State's principal witness that the codefendant was found not guilty; and (2) there was no effective corroboration of the informer's actions either in the form of a complete search, surveillance of the transaction, recovery of all the marked bills or immediate arrest.

This case is an example of an arrest made as a result of a "controlled buy" where a police informer makes a narcotics purchase with marked money and the police shortly thereafter arrest the alleged seller. From the evidence it appears that on the evening of December 11, 1962, at approximately 9 or 9:30 p. m., the State's witness, James Henry, a narcotics addict and informer met Narcotics Inspectors Webster, Rathel

and Paschel at 50th Street and Cottage Grove Avenue. Henry was searched by one of the officers and then handed five $1 bills, the serial numbers of which were recorded. He was then driven to 42nd Street and South Park Avenue where he left the squad car and attempted to make a narcotics purchase while under constant observation by the officers. He was unsuccessful and returned to the car.

The police officers then drove Henry to 43rd Street between South Park and Calumet where he left the auto for the second time, walking one half block west to a pool hall located at 43rd and Calumet. What occurred inside the pool room is subject to dispute.

According to the informer, he walked up to Edward Washington, the codefendant in the trial below, and asked where Eddie Frank was. Washington replied that Frank was in the rear of the pool hall. The informer, Henry, walked to the rear and observed that Washington was following him. He spotted Frank and asked to purchase narcotics from him. He gave Frank the marked bills in exchange for a tin foil packet. Frank immediately turned over the money to Washington who had been standing only a foot away during the entire transaction. Henry left the pool hall and walked to the nearby "El" station where the police were waiting. He turned the tin foil package over to the officers and then spotted Washington coming out of the pool hall and heading for the "Hamburger Hub," a restaurant directly beneath the "El" tracks and across the street from the station. Washington was apprehended, placed under arrest and four of the marked bills were found on his person as a result of a search conducted in the presence of one of the testifying officers. A few moments later Frank was arrested in the pool room

254

and the remaining marked bill was found in his possession.

Codefendant Washington testified that Henry entered the pool room and asked him where Frank could be found. He directed Henry to the rear of the pool hall but did not follow him. He knew nothing of the alleged sale of narcotics and testified that he received the four marked bills from Frank as payment of a loan. Frank gave him the $4 from approximately $23 which Washington assumed that Frank had won in the pool game.

Frank testified that he was shooting pool when Henry, an acquaintance of his, approached him and said, "Hello." Frank was gambling as a participant in the pool game and Henry proceeded to make some bets on the game with men standing around the table. Frank did not bet directly with Henry. Frank denied any conversation with Henry relating to sale of narcotics. Later Washington walked to the back of the pool room and asked for the return of $4 loaned to Frank earlier in the day, as he was hungry and wished something to eat. Frank gave him the money. Henry "hung" around the pool room for about ten minutes according to Frank and his arrest occurred about ten minutes after Henry left. Eddie Frank denied receiving any money from Henry and did not know who gave him the marked bill or when he acquired it.

Officer Rathel testified for the State and corroborated all of Henry's testimony as to the procedures employed in the "buy." The officer did, however, testify that neither he nor his associates were able to observe what took place in the pool room. The parties stipulated that the packet which Henry turned over to the police after emerging from the pool room contained heroin.

255

■ The defendant first contends that a conviction based upon this informer's testimony will not stand the test of reasonable doubt since the evidence of the same witness was insufficient to convict his codefendant. We think otherwise. It was not a matter of disbelieving the witness, as counsel argues, which resulted in the not guilty finding as to Washington; it was rather a result of the State's inability to introduce evidence connecting him with the crime of selling narcotics. The record is clear that the informer never asked Washington for narcotics nor did the informer receive narcotics from him or hand him any money. The only evidence against Washington was the finding of four of the five prerecorded bills on his person when he was searched. Both Washington and Frank when testifying in their defense stated that Washington received the four dollars as part repayment of a loan made earlier in the day.

■ ■ Defendant's second contention is that there was a failure of corroboration of the informer's actions and testimony by any of the methods which the law demands as protection for the accused in "controlled buy" situations. In a "controlled buy" situation where the party making the purchase is an addict-informer, his testimony must be scrutinized with the greatest caution. It is true, however, that the testimony of a single witness to the unlawful sale of narcotics, if positive, and the witness credible, is sufficient to convict even where such testimony is contradicted by the accused. People v. Norman, 28 Ill2d 77, 190 NE2d 819. Since the credibility of a narcotics addict-informer is always in some doubt, the courts have developed various safeguards which will bolster and corroborate such testimony. See 31 University of Chicago Law Review 137 (1963).

■ Counsel points first to the alleged insufficiency of a complete search of the informer's person and clothing before he entered the pool hall. Officer

Rathel testified that he searched Henry and the testimony of Henry himself provides us with a description of the search. The police searched his shoes and socks, went through his pockets and cuffs and searched his hat and tie. While the police did not search the informer's collar or underwear, the thoroughness of the search only goes to the weight to be given the testimony of the witnesses and is primarily the responsibility of the trier of fact.

The defendant next argues that the case law requires more corroboration of the narcotics purchase itself than was present in the case at bar. It is the defendant's contention that the addict-informer was not kept under close surveillance at the time of the purchase, thereby raising a reasonable doubt as to his guilt. In support of this proposition, the defendant cites the case of People v. Bazemore, 25 Ill2d 74, 182 NE2d 649. In that case, as in the case at bar, a police informer, after being searched and given marked money, entered a pool hall unaccompanied by the officers with the intention of buying narcotics. He was in the pool room for some time and emerged with two tin foil packets which were found to contain a derivative of opium.

After receiving a description of the seller and information as to where the sale had taken place, the police made a search of the area, but found no trace of the man the informer had described. The informer next saw the defendant, Bazemore, two months later, in the same vicinity, and reported this to the police. Bazemore was apprehended at that time. No narcotics were found on his person, nor was any of the inventoried money ever recovered. On this evidence Bazemore was convicted of the unlawful sale of narcotics and was sentenced to from ten to twelve years in the penitentiary. The Supreme Court on appeal stated the issue of the case as "whether the testimony of a narcotics addict, uncorroborated by other

evidence, facts or circumstances in the case, is sufficient to convict." Having asked the question the Court was quick to give its answer:

> This is not a case where the informer's accusations received corroboration from close police surveillance of the transaction, from an immediate arrest, or from the finding of marked money on the accused, but one which developed in such a way that the informer was at liberty to name almost any person he wished to select as the guilty one. (77)

In the case at bar there was an immediate arrest of the defendant made upon the description furnished by Henry. There was not here the two-month delay between the alleged commission of the offense and the apprehension of the defendant which characterized the Bazemore case. In addition, the testimony of Henry was corroborated by the finding of marked money on the person of the defendant. It has been held in a recent Illinois case dealing with a narcotics purchase, that the finding of a single bill on the defendant out of six used in the purchase is convincing evidence leading to a conviction. People v. Hines, 30 Ill2d 152, 195 NE2d 712. We have considered defendant's argument that he acquired the marked money in his gambling activities in the pool hall. We feel that the circumstances of the case do not support such a conclusion.

The Hines case also goes far toward answering the last major contention made by the defendant. He contends that there was a serious break in the "constant surveillance" which the State claims to have kept over the informer. We agree with the appellant that the State has overstated its case when it speaks of "constant surveillance." The question remains, however, whether the total observation which the

258

State has been able to present in various other cases is an essential element of a "controlled buy" conviction. In the Hines case the informer was searched and given marked bills. He met some men on the street and they proceeded to a basement apartment. The informer claimed that the defendant had sold narcotics to him after they entered the apartment. The police were unable to observe what transpired from the time the informer entered the building until he emerged with the packet of narcotics. The police then entered the apartment pointed out to them by the informer and arrested the defendant and others and recovered one of the six marked bills from Hines. On this evidence the Supreme Court affirmed the conviction.

■ We feel that the Hines case illustrates the attitude of our Supreme Court towards convictions brought about in a "controlled buy" situation. Once the court agreed that a "controlled buy" was a permissible means of securing evidence against a narcotics seller it then effectuated this position by allowing the police reasonable scope in the type of circumstances under which a "controlled buy" would be upheld. To hold, as the appellant demands that the police must observe the passage of the narcotics or the marked money and make a simultaneous arrest is to hold the police to an impossible burden and to destroy the "controlled buy" as a weapon of law enforcement. We find that the testimony of the State's witness is sufficiently corroborated by other competent evidence to cause the judgment of the trial court to be affirmed.

Affirmed.

MURPHY, P. J. and KLUCZYNSKI, J., concur.