**People of the State of Illinois, Defendant in Error, v. Norman Jackson, Plaintiff in Error.**

**Gen. No. 49,641.**

First District, Third Division.

April 29, 1965.

Donald J. Duffy, of Chicago, for plaintiff in error.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and James R. Thompson, Assistant State's Attorneys, of counsel), for defendant in error.

MR. JUSTICE SULLIVAN delivered the opinion of the court.

The plaintiff in error, Norman Jackson, hereinafter referred to as the defendant, has brought a writ of error to reverse his conviction after trial by the court without a jury on a plea of not guilty of a charge of unlawful sale of narcotics. The case is before us having been transferred from the Supreme Court. The defendant raises two points: (1) that the trial court erred in permitting a police officer, who had been present in the courtroom during the testimony of a police informer, to testify over the objection of defendant's counsel after defendant's motion to exclude witnesses was granted and the State had joined in that motion, and (2) that the defendant was not proven guilty beyond a reasonable doubt.

The following was adduced at the trial:

On July 27, 1962, one Rick Van Mason, alias Wallace, a police informer, went to the Bureau of Narcotics at 11th and State Street where he was searched by a police officer of the city of Chicago. After the officer satisfied himself that there was nothing on Van Mason's person, or in his clothing, Van Mason

was given a five dollar bill and five one dollar bills, the serial numbers of which had been recorded on a yellow piece of paper. He signed his name to the paper containing the serial numbers after checking the numbers on the bills with the numbers on the paper. He was then driven to 46th Street and Michigan Avenue in the city of Chicago by a police officer. He got out of the car and walked into the alley behind 4622 South Indiana Avenue. Under the surveillance of a police officer he walked through the yard at that address, knocked on a door to apartment 14 on the first floor rear and was admitted to the apartment. Officer Gary and some other officers went to the vestibule of the same building on Indiana Avenue where they waited for Rick Van Mason to appear. Twenty to thirty minutes after going into the apartment Rick Van Mason was observed by the officer in the alley leaving the apartment through the rear door which opened onto the rear porch. He then went up the stairs to the second floor. The informer was next seen by Officer Gary as he came down the stairs from the second floor into the vestibule of the building at 4622 South Indiana Avenue. At that time he gave to Officer Gary two tinfoil wrapped packages containing white powder. A field test was performed by Officer Gary and the white powder was determined to contain an opium derivative. At the trial it was agreed that the police chemist would testify that the white substance in the packages was heroin. Officers Gary and Russell and Rick Van Mason, the informer, then went to the door of apartment 14 and knocked. No one answered the door so they broke it down. In the room they found the defendant, Norman Jackson, and in the kitchen of that apartment they found Thelma Pearson, who was the lessee of the apartment. They also found the money, which had been given to Rick Van Mason, on the dresser in the bedroom of the

apartment. They searched the defendant and found no narcotics or money on his person. The informer had told the police officers that he had purchased the narcotics from Norman Jackson. Norman Jackson was thereupon arrested and taken to the police station.

The defendant denied selling narcotics to Rick Van Mason. He stated that the money on the dresser belonged to him and to Thelma Pearson, and that when Rick Van Mason came into the room he had a five dollar bill and five one dollar bills, for which the defendant gave him a ten dollar bill. The defendant did not live in this apartment but was visiting Thelma Pearson because she had been ill.

As to defendant's first point, that the court erred in permitting Officer Gary to testify over the objection of defendant's counsel after a motion to exclude all the witnesses had been made and granted, the defendant cites People v. Dixon, 23 Ill2d 136, 177 NE2d 206. In that case the defendant's counsel at the beginning of the trial had moved to exclude witnesses. The trial judge denied the motion and said, "Well, I don't like to do that." The court stated that it was satisfied from a study of numerous authorities that the majority rule to the effect that exclusion of witnesses should be a matter within the sound judicial discretion of the trial court is a sound one, but it expressed its opinion that a motion to exclude witnesses should normally be allowed. The court held that the trial judge was not exercising sound judicial discretion in refusing to exclude the witnesses because he didn't "like to do that." The court stated in the course of the opinion that it may be proper in a particular case to permit one or more witnesses to remain in the courtroom, and referred to People v. Townsend, 11 Ill2d 30, 141 NE2d 729, and People v. Reed, 333 Ill 397, 164 NE 847. In both the Reed and Townsend cases the trial court, while granting a motion to ex-

305

clude the witnesses, permitted one material witness to remain in the courtroom throughout the trial. The Supreme Court in those cases held that the exclusion of witnesses was within the sound discretion of the court, and that the exercise of such discretion would not be disturbed unless a clear abuse or prejudice to the defendant was shown.

The defendant here, however, urges that the trial judge exercised no discretion in this case other than to grant the motion to exclude all witnesses without making any exception at the time of the granting of the motion, and that subsequently when Officer Gary was called to testify the defendant's attorney objected on the basis that the witnesses had been excluded and that this police officer had remained in the courtroom during the testimony of at least one of the State's witnesses. The trial judge overruled the objection and stated that he always permits the officer in charge of the case to stay in the courtroom, and then said, "Probably I didn't make any special mention of it but I always do, I always permit the officer to stay. I do that in every case. The State would be lost if they didn't have an officer here." We cannot agree with the contention of the defendant that the trial judge did not use any discretion at all in permitting one witness to remain in the courtroom and subsequently excepting that witness from the effect of the order excluding witnesses. While it is true that the trial judge did not specifically except this witness from the order excluding witnesses at the time the motion was made, we believe that this case would come under the principles announced in People v. Mack, 25 Ill2d 416, 185 NE2d 154, and People v. Townsend, supra, in both of which cases the court held it proper to except one police officer from the order excluding the witnesses.

In People v. Miller, 26 Ill2d 305, 307, 186 NE2d 317, 318, the court said:

"The question whether denial of a defendant's timely motion to exclude all witnesses in a criminal case constitutes reversible error has been discussed in several recent decisions of this court. We have held that it is not reversible error for a trial judge in the exercise of sound judicial discretion to exempt a police officer from an order excluding all witnesses in the absence of a showing of prejudice to the defendant. (People v. Chennault, 24 Ill2d 185; People v. Dixon, 23 Ill2d 136; People v. Strader, 23 Ill2d 313.) Defendant first contends that the court failed to exercise its sound judicial discretion. The record shows that the trial judge was familiar with and relied upon the practice in the criminal court of Cook County to allow a police officer to remain in the court room to assist the prosecutor. We find no arbitrary abuse of discretion in the court's ruling."

In the instant case the defendant failed to show in what way the testimony might have differed had the officer been excluded. In the Miller case the court said that to accept the defendant's theory would be to adopt a rule allowing the exclusion of all witnesses as a matter of right and to ignore the established custom of the criminal courts.

In the case of People v. Walker, 50 Ill App2d 394, 200 NE2d 26, the identical contention was raised by the defendant as has been raised here. The facts were slightly different in that case in that no objection was made to the police officer's testimony. However, the court held in that case that it is the established practice in Cook County to permit the prosecution to have one officer excepted so that he may assist in the conduct of the case, and that the reception of the officer's testimony was within the sound discretion of the court.

■■■ It was not error for the court to have permitted the police officer to testify after having excluded

all witnesses, and the trial judge properly exercised his discretion in this matter.

We now come to the second point raised by the defendant, namely, that the defendant had not been proven guilty beyond a reasonable doubt.

The defendant contends that there were discrepancies between the testimony of the police officers, who were keeping the informer under surveillance, and the testimony of the informer. These alleged discrepancies related principally to which door of the apartment in question the informer entered and which door was used when he left. From reading the record in this case we must conclude that the informer entered the apartment through the rear door off the back porch and was so observed entering by one of the police officers who was stationed at the rear of the lot. The record also would indicate that the informer left the apartment by the same door and went up to the second floor where he again entered the building from the rear and proceeded to the front stairway of the building and down to the lobby where the officers were waiting for him. The informer's testimony was that he was on the second floor for a very few seconds, just long enough to walk from the rear to the front of the building. The theory of the defendant's contention is that the informer might have obtained the narcotics from someone on the second floor, but from the record it would appear that he had no time to obtain the narcotics between the time he left the apartment, in which the arrest was made, until he appeared in the front hallway of the building, from which place the police were keeping him under surveillance. Furthermore, the informer testified that he left the apartment by way of the rear door at the defendant's request. When the defendant asked the informer to

leave by way of the rear door, the informer no doubt assumed that the defendant did not want him to be seen leaving the apartment by persons who might be in the first floor hallway.

In People v. Walker, 50 Ill App2d 394, 200 NE2d 26, the police informer was trailed by a police officer who was directly across the street. The informer walked up Indiana Avenue and went into a poolroom where he met the defendant. The informer and the defendant left the poolroom and walked together, while the police officer, who was across the street, observed them. The police officer testified that he had followed the two men to a church where they stopped momentarily and appeared to converse and then moved on. The informer testified that when they stopped at the church the defendant retrieved a cigarette package from one of the church steps, and he saw the defendant remove two tinfoil containers from the cigarette package, which containers were later identified as those containing narcotics. The police officer testified that he followed them from across the street for some ten blocks and then the informer and the defendant entered a building while the police officer remained outside. Then after the two men left the building they began walking again, and, according to the informer, the defendant at that point gave him two tinfoil packages. They continued walking and the defendant entered a restaurant. The officer returned to the squad car where he was met by the informer, who gave him the tinfoil packages, the contents of which were then field tested. Shortly thereafter the defendant was arrested, but the money bearing the previously recorded serial numbers was never recovered. The court there found that the informer had been kept under close surveillance although he had gone into a poolroom and had also gone into an apartment building.

In the case before us the informer was under constant surveillance except for the time he was in the apartment wherein the arrest was made, and for the very short period of time it took him to go to the second floor, walk the length of the building from the rear to the front and down the stairs to the corridor hall.

The defendant argues that because the marked money was found on the dresser of the apartment and because the apartment was not his, the possibility presents itself that the two tinfoil packages might have been purchased from Thelma Pearson. However, the only positive evidence of a purchase is that of Rick Van Mason, who testified that he purchased the tinfoil packages from the defendant.

Thelma Pearson was called as a witness by the defendant, and after having been advised of her constitutional rights by the trial judge, she did not testify as to any material fact.

Rick Van Mason testified, in answer to a question put to him by the trial judge, that he was using narcotics on July 27, 1962. That is the date of the defendant's arrest. He also testified that he had used narcotics about two weeks previously, but he did not admit that he was presently a narcotics addict. Defendant contends that since the informer was a user of narcotics, his testimony was untrustworthy.

In People v. Lewis, 25 Ill2d 396, 185 NE2d 168, and People v. Boyd, 17 Ill2d 321, 161 NE2d 311, the court has said that the fact that a witness is a narcotics addict is an important consideration in passing on the credibility of that witness because the testimony of a narcotics addict is subject to suspicion due to the fact that habitual users of narcotics become notorious liars.

In People v. Norman, 28 Ill2d 77, 82, 190 NE2d 819, 822, the court said:

"Although the testimony of a narcotics addict must be scrutinized with caution, his testimony may be sufficient to sustain a conviction if credible under the surrounding circumstances."

The court stated in People v. Hines, 30 Ill2d 152, 195 NE2d 712, that the mere fact that a person is a confirmed addict and informer does not make his testimony unbelievable where there is ample corroboration.

In the case before us the marked money was found in the room wherein the defendant was arrested. The testimony of the defendant that the informer came into the room, saw a ten dollar bill on the dresser and then suggested that he change the ten dollar bill for the five dollar bill and the five singles is incredible.

It is also urged by the defendant that because the informer was a parole violator from Michigan his testimony was unworthy of belief. He had been arrested two weeks before the date of the defendant's arrest, while he had narcotics in his system, and defendant's counsel on cross-examination of the informer sought an admission from him that he was testifying against the defendant hoping to obtain help from the police in connection with his parole violation, but he denied the police had offered or promised him any help, and there was no showing that any arrangement had been made with the police.

 The court had an opportunity to observe the witnesses and came to the conclusion that the testimony of the defendant was beyond belief and accepted the testimony of the informer on the question of the purchase of the narcotics.

We feel that under the evidence in this case, in view of the surveillance by the police officers of the informer, the obtaining of the tinfoil packages containing narcotics, the recovery of the marked money in

the room, together with the unbelievable story told by the defendant, the defendant has been proven guilty beyond a reasonable doubt.

Judgment affirmed.

DEMPSEY, P. J. and SCHWARTZ, J., concur.