THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JOSEPH AIRDO (Impleaded), Defendant-Appellant.

(No. 54830;

First District—September 26, 1972.

Gerald W. Getty, Public Defender, of Chicago, (Harold A. Cowen, Ronald P. Katz, and James J. Doherty, Assistant Public Defenders, of counsel,) for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Robert A. Novelle and Terence J. Mahoney, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE SCHWARTZ delivered the opinion of the court:

Defendant was arrested and charged with armed robbery and attempted murder. He was tried by jury, found guilty on both counts, and sentenced to serve not less than six nor more than ten years for robbery, and not less than four nor more than eight years for attempted murder, the sentences to run concurrently. Defendant raises three points on appeal:

(1) He was denied a fair trial because the State misstated certain evidence in its closing argument;

(2) The court committed error in not sustaining defendant's objection to the admission of certain of the State's exhibits; and

(3) Defendant was not proved guilty beyond a reasonable doubt.

The facts follow.

On September 13, 1968, at 2:00 P.M., the Bellwood Currency Exchange, located at 3708 Van Buren Street, was robbed after an automobile crashed through the rear door. The owner of the business, Shirel Vetzner, saw one of two men sitting on the hood of the car pointing a gun at her, while the second robber went to the safe and extracted money and documents which he placed in a brown paper bag. Both men wore masks. The two robbers then switched cars and drove away in a red Pontiac GTO with a black convertible top. Alerted by a pedestrian the police began looking for the red car, and some time later two Maywood police officers received a description of the car while patrolling the vicinity of Eisenhower Expressway. While observing traffic from the eastbound ramp at 17th Avenue they saw a car with three occupants which fit the description they had received, and they followed it. They first followed at a normal rate of speed, then drove in excess of 80 miles

an hour, continuing the chase to Sixth Avenue where the red GTO evaded a police road block and turned off at the First Avenue exit.

While on the First Avenue ramp one of the pursuing officers fired a warning shot. The immediate response was a shot fired at the patrol car which pierced the windshield. The officer testified that while the inside of the patrol car was filled with powdered glass, visibility remained good. After reaching the top of the ramp the convertible turned onto First Avenue, with the police car in pursuit. The robbers jumped from their car while it was still in motion—two of them [Malone and Zischke] from the right side—and began shooting at the officers. The man later identified as Airdo got out of the left side of the car, ran behind it and crossed the street, carrying what appeared to be a shopping bag. At one point he was within ten feet of the officers and in view of one of them for as long as five seconds. There is no testimony to indicate that Airdo ever stopped to exchange gunfire with the police. He was later found crouching in some bushes at 1827 Second Avenue, breathing heavily. A brown paper bag containing the money from the Currency Exchange was found in some bushes in front of 1834 First Avenue.

Defendant's employer testified that on the day in question defendant had requested the day off in order to shop for a house. Defendant testified that he had parked his car and was walking down Second Avenue looking for "For Sale" signs when he heard sirens and gunshots. He ran and hid in the bushes to avoid implication because he was already a parolee and did not want to go back to jail.

■■ It is contended that defendant was denied a fair trial due to the admission into evidence of two guns; that neither gun was found on defendant or near where he was apprehended, nor did the guns contain his fingerprints; and that under the circumstances the failure to give any limiting instruction regarding this evidence was so prejudicial as to deny defendant a fair trial. It is true that in order to justify the admission of evidence a connection must be established between the evidence introduced and the crime charged. *People v. Germany*, 28 Ill.2d 154; *People v. Ashley*, 18 Ill.2d 272.

■■ In the case before us one of the charges against defendant was attempted murder. The guns, both of which had been fired, were found in the immediate area where Malone and Zischke were arrested. By statute (Ill. Rev. Stat. 1969, ch. 38, par. 5—1), the defendant is liable for the criminal acts of his cohorts. However, such criminal acts must be proved, and in this case the admission of the guns was part of the evidence introduced to show that Malone and Zischke had attempted to murder one of the pursuing officers. Defendant was liable for the acts of

Malone and Zischke, and any evidence showing that they attempted to murder the officers was admissible against defendant.

Defendant next contends that he was not proved guilty beyond a reasonable doubt because

(1) the identification of defendant as the driver of the car was unreliable;

(2) there were certain inconsistencies in the State's evidence; and

(3) defendant's explanation of his presence in the bushes was plausible.

■■ It is the function of the trier of fact to judge the credibility of the witnesses, and its findings will not be disturbed unless the evidence is so unsatisfactory as to leave a reasonable doubt of defendant's guilt. In the instant case defendant was identified by two police officers, both of whom had ample opportunity to observe him as he ran from the driver's side of the escape car; and he was found hiding in nearby bushes with a paper bag containing the proceeds of the robbery found in the same area. Inconsistencies in the evidence—like defendant's explanation of the events—were factors which the jury took into account in making its determination. Based upon our examination of the record, we are convinced that the determination was correct. Accordingly, we find no merit in this contention.

■■ Defendant contends that on four occasions the prosecutor misrepresented the evidence in closing argument, thus inflaming the jury against him. In *People v. Hines,* 30 Ill.2d 152, 157, the court, referring to the remarks of counsel during argument, said:

"While certain portions [of prosecutor's closing argument] appear to have been improper, in view of the clear and convincing evidence of guilt we cannot say that such remarks prejudicially influenced the jury or that the verdict could have been otherwise had the remarks not been made."

In the instant case the evidence of guilt was established well beyond a reasonable doubt, and while some remarks of the prosecutor in closing argument were to some extent improper, they were not such as would have changed the verdict. Also, our examination of the record indicates that on each occasion of alleged error a prompt objection was sustained by the trial court, and the jury was specifically instructed to disregard any statements in closing arguments not properly based upon the evidence.

Judgment affirmed.

BURMAN and LEIGHTON, JJ., concur.