**In the Matter of Preston Dontiez PEARSON.**

**No. 5022.**

District of Columbia Court of Appeals.

Argued Dec. 8, 1969.

Decided Feb. 20, 1970.

Peter C. Jenkins, Washington, D. C., for appellant.

Leo N. Gorman, Asst. Corp. Counsel, with whom Hubert B. Pair, Acting Corp. Counsel, and Richard W. Barton, Asst. Corp. Counsel, were on the brief, for appellee.

Before KELLY, FICKLING, and KERN, Associate Judges.

KERN, Associate Judge.

After a jury trial to determine if appellant had violated D.C.Code 1967, § 22–2801 by having carnal knowledge of a girl under 16 years of age, appellant was held to be under the jurisdiction of the Juvenile Court, D.C.Code 1967, § 11–1551(a) (1) (A), and ordered committed to the Department of Public Welfare. This appeal relies entirely on errors alleged to have occurred in the courtroom after the jury returned from its deliberations and the foreman announced a

guilty verdict. In response to the clerk's question of "So say you each and all", the jury said "yes" in chorus. Defense counsel requested a poll of the jury and the clerk began the poll with a Miss Cross, the first juror. The following colloquy then occurred:

MISS CROSS: I would like to ask a question. If the verdict is guilty, are you to say "guilty"?

THE COURT: Yes, if you believe he is guilty.

MISS CROSS: If you say "not guilty", and the verdict is "guilty", what happens then?

THE COURT: Then a mistrial may be declared.

Appellant's trial counsel then moved for a mistrial on the ground that the juror was "not sure of her decision". The trial judge received assurance from the foreman that a verdict had been unanimously reached in the jury room. Thus informed, he ordered that the poll be taken, requesting that "[e]ach of you [jurors] * * * state your individual position. * * * [I]f you do not agree with everyone's verdict, you should so indicate". Miss Cross, again the first juror to be polled, responded "not guilty". The poll continued, and every other juror announced a "guilty" verdict.

The jury retired to the jury room and appellant's counsel renewed his request for a mistrial. After some discussion with the two attorneys as to what steps should be taken, the trial judge decided to give the jury 15 more minutes for deliberation without any further instruction such as the *Allen* charge.[1] He called back *only* the foreman, and instructed him as follows:

After conferring with the attorneys I have decided to permit you some fur-

ther time for deliberation in this impasse that exists. I want you to bear in mind that there should be no overbearing of any individual juror by any other member of the Jury. On the other hand, I will give you some time for suitable deliberation and discussion among you to see if this matter can be resolved on a unanimous basis. You may retire and continue your deliberations until the Court recalls you.

Fifteen minutes later, without any indication that a unanimous verdict had been reached or receipt of any further word from the jury, the trial court recalled the jury and the following colloquy took place:

THE COURT: Mr. Ballard, as foreman, do you feel the Jury is unanimous or still divided?

MR. BALLARD: Well, your Honor, I feel we didn't have time to get the complete information this last time we were out. We still have one person * * *

THE COURT: Is the Jury divided 11 to 1?

MR. BALLARD: Right, your Honor.

THE COURT: You vote for not guilty, is that right, Miss Cross?

MISS CROSS: I'll change it to guilty.

After another conference at the bench, the jury was polled and all, including Miss Cross, answered "guilty". The judge announced that he was discharging the jury and taking the verdict under advisement. He later decided to accept the "guilty" verdict. Appellant argues that a mistrial should have been declared because the occurrences described above tended to coerce Miss Cross into eventually declaring herself in favor of a "guilty" verdict.[2]

---

1. Allen v. United States, 164 U.S. 492, 501, 17 S.Ct. 154, 41 L.Ed. 528 (1896).

2. There is no suggestion in the briefs or the record that the trial judge attempted

to coerce the juror. To the contrary, he made every effort to maintain a neutral position throughout.

At common law, once a verdict was announced and a poll of the jury disclosed a dissenting juror, no further deliberations were allowed; a mistrial was required. State v. Gullette, 3 Conn.Cir. 153, 209 A.2d 529 (1964). However, Juvenile Court Rule 14, subd. C states that:

> If, upon the poll, there is not unanimous concurrence in the verdict, the jury may be directed to retire for further deliberation or it may be discharged.

*See also* Fed. R. Crim.P. 31(d). It is obvious that if *one* juror opposes the announced verdict, the jury must be discharged or returned for more deliberation. In the instant case, despite the fact that the first juror polled announced "Not guilty", the jury poll was continued through all other 11 jurors. We have grave doubt about the desirability of such a practice. All that is accomplished by continuing the poll is to ascertain the numerical division of a jury in disagreement. Although the method here is different, the result seems similar to that condemned in Brasfield v. United States, 272 U.S. 448, 47 S.Ct. 135, 71 L.Ed. 345 (1926). There, the trial judge asked the foreman of a deliberating jury what the numerical division was, without requesting which number favored a conviction. In reversing the subsequent conviction, the Court stated (at 450, 47 S.Ct. at 135):

> Such procedure serves no useful purpose that cannot be attained by questions not requiring the jury to reveal the nature or extent of its division. Its effect upon a divided jury will often depend upon circumstances which cannot properly be

known to the trial judge or to the appellate courts and may vary widely in different situations, but in general its tendency is coercive. It can rarely be resorted to without bringing to bear in some degree, serious, although not measurable, an improper influence upon the jury, from whose deliberations every consideration other than that of the evidence and the law as expounded in a proper charge, should be excluded. Such a practice, which is never useful and is generally harmful, is not to be sanctioned.

*Cf.* Mullin v. United States, 123 U.S.App. D.C. 29, 31, 356 F.2d 368, 370 (1966).

We are unable in the instant case to discern a "useful purpose" outweighing the potential harm [3] in continuing the poll. The coercive atmosphere created by revealing a split in the jury room, decried in *Brasfield,* is magnified when it occurs in open court. The poll should have been suspended as soon as it became clear that Miss Cross knowingly, in the absence of confusion, *cf.* Williams v. United States, D.C.Cir., 419 F.2d 740 (decided Oct. 23, 1969); Jackson v. United States, 128 U.S.App.D.C. 214, 386 F.2d 641 (1967), had dissented from the announced verdict.[4]

This holding does not conflict with United States v. Brooks, D.C.Cir., 420 F.2d 1350 (decided Dec. 17, 1969). In that case, the first juror polled indicated disagreement with the announced verdict of guilty. However, defense counsel then stated, *"I would ask to have the rest of the jury polled"* (emphasis in original opinion). The court granted his request and con-

---

3. The Government argued that knowledge of the extent of the jury's division is helpful for determining whether to order further deliberation or declare a mistrial. We suspect that the trial judge in *Brasfield* had the same purpose in mind. The more relevant and proper considerations would appear to be the length of time spent in deliberation, and the foreman's opinion with regard to the firmness of the dissenting jurors' convictions.

4. The Government mentions in its brief that defense counsel objected to the poll only after it had been completed. However, counsel made his motion previously for a mistrial and thereafter renewed it on several occasions during this portion of the trial.

tinued the poll, which revealed a total of two dissenting jurors. In upholding a later verdict of guilty, the Court of Appeals was greatly influenced by the action of defense counsel.[5]

> In the instant case it is significant that appellant's able trial counsel, who was sufficiently familiar with the problems of jury coercion to be able to cite the *Mullin* case from memory, not only failed to object to the questioning of the jury but also *requested* that polling continue after the jury's apparent lack of unanimity was revealed. 420 F.2d at 1354 (Emphasis in original).

■ Rejecting the applicability of *Brasfield, supra*, the court went on to comment that although a jury poll results in disclosing the numerical division of a jury, this is only a side effect of its otherwise "useful purpose" of verifying the verdict. We agree with this proposition. However, *after* a juror's dissent is clearly registered, *further* polling is unnecessary and, in the absence of a contrary request by defense counsel, is error.

■■ There are further circumstances which cast grave doubt on the propriety of the procedure followed here. When the jury was ordered to resume its deliberations after the poll, the judge had *only* the foreman brought in for the supplemental instructions set forth above. While presumably the foreman then conveyed these instructions to the jury, including the warning by the trial court about the "overbearing of any individual juror", the instruction of a jury by proxy is fraught with dangers, including the possibility of erroneous transmission, or lack of understanding by the jurors.

> [I]t is * * * important to make as certain as may be that *each* member of the jury *has actually received the instructions*. It is therefore essential that all instructions to the jury be given by the trial judge orally in the presence of counsel and the defendant.

United States v. Noble, 155 F.2d 315, 318 (3rd Cir. 1946) [6] (Emphasis supplied).

Finally, we note that when the jury was brought into the courtroom a second time, it was after 15 minutes of deliberation without any indication from them that they had as yet reached a unanimous verdict. Indeed, the foreman announced in open court that they were still divided 11 to 1. Yet the trial judge proceeded to identify and then interrogate the dissenting juror who thereupon announced that she would change her verdict to guilty. We again cannot find a "useful purpose" in such procedure. *Brasfield, supra*. Jury deliberation is to take place in the jury room, without the judge as an active participant. *See* Bruce v. Chestnut Farms-Chevy Chase Dairy, 75 U.S.App.D.C. 192, 126 F.2d 224 (1942).

In light of all the occurrences outlined above, "we cannot say with assurance that the jury freely and fairly arrived at a unanimous verdict." Matthews v. United States, D.C.App., 252 A.2d 505, 507 (1969). The judgment below must be reversed and the case remanded for a new trial.[7]

Reversed and remanded.

---

5. *See also* concurring opinion of Judge Robinson.

6. Again, we do not find counsel's failure to object specifically at this point to be significant.

7. We hesitate to assign controlling importance to any one of the enumerated errors; "[i]t seems best to avoid general pronouncements on the subject and to address ourselves to particular issues as they may arise." Williams v. United States, D.C.Cir., 419 F.2d 740 at 746, n. 8.