Raymond C. JONES, Appellant,

v.

UNITED STATES, Appellee.

No. 5262.

District of Columbia Court of Appeals.

Argued Dec. 22, 1970.

Decided Feb. 26, 1971.

Thomas Fortune Fay, Washington, D. C., for appellant.

Daniel J. Bernstein, Asst. U. S. Atty., with whom Thomas A. Flannery, U. S. Atty., John A. Terry and Michael J. Madigan, Asst. U. S. Attys., were on the brief, for appellee.

Before GALLAGHER, PAIR and REILLY, JJ.

PAIR, Associate Judge:

Appellant was tried by a jury on an information charging that he possessed (1) narcotics in violation of D.C.Code 1967, § 33–402, and (2) implements of crime in violation of D.C.Code 1967, § 22–3601. The jury returned a verdict of not guilty on the charge of possession of narcotics and a verdict of guilty on the charge of possession of implements of crime.

On this appeal several errors are assigned, but only one is deemed to be of such a substantial nature as to require discussion. That error is alleged to have occurred after the jury returned from its deliberations and the foreman announced a verdict of guilty on the second charge.

Appellant contends in this connection that because during a poll of the jury, a juror repeatedly expressed a verdict different from that announced by the foreman, the trial judge should have returned the jury to the jury room or should have declared a mistrial. He contends further that the repeated "identification" and "interrogation" of the particular juror created

a coercive atmosphere in which a verdict should not have been accepted.

■ Finding abundant support in the record for these contentions, reversal of the judgment of conviction is compelled.

What the record discloses is that, after the jury returned a verdict of guilty on the charge of possession of implements of crime, defense counsel requested a poll of the jury and the following colloquy took place:

MR. FAY: Yes, Your Honor, I would ask that the jury be polled with respect to the second charge.

THE COURT: Very well, with respect to the charge of possession of implements of crime, to-wit—narcotic paraphernalia on which the foreman has declared the jury returned a verdict of guilty, the jury will be polled.

THE CLERK: Miss Emma White, is the defendant guilty or not guilty of the charge of possession of narcotic paraphernalia?

EMMA WHITE: Not guilty.

THE COURT: Do you understand the question?

EMMA WHITE: Again, please?

THE COURT: Ladies and gentlemen of the jury, if you don't understand the question and the charge to which it applies, please say so.

THE CLERK: Is the defendant—

THE COURT: This question propounded by the Clerk pertains to the charge of possession of implements of crime, to-wit, narcotic paraphernalia. It does not pertain to the charge of possession of heroin. And I repeat, the question which is to be propounded by the Clerk pertains only to the charge of possession of implements of crime, narcotic paraphernalia. Proceed.

THE CLERK: Miss Emma White.

THE COURT: First let me ask this, does every juror understand that? Do you understand it Miss White?

EMMA WHITE: I think I do.

THE COURT: It is not a question of whether you think, it has got to be "yes" or "no."

EMMA WHITE: Yes, I do.

THE COURT: Are you sure?

EMMA WHITE: Yes.

THE COURT: Did you understand it when it was first propounded by the Clerk?

EMMA WHITE: No, I didn't. I am sorry.

THE COURT: Proceed, sir.

THE CLERK: Emma White, is the defendant guilty or not guilty of the charge of possession of implements of crime?

EMMA WHITE: Not guilty.

The clerk then proceeded to ask the remaining jurors their verdicts with respect to the charge of possession of implements of crime and each of the remaining jurors announced that their verdict was "guilty." The following additional colloquy then took place:

THE CLERK: We have 11 guilty and 1 not guilty, Your honor.

THE COURT: May I have the jury list?

* * *

THE COURT: Is it Miss or Mrs. White?

EMMA WHITE: Mrs.

THE COURT: You have heard 11 jurors report a verdict of guilty. Your foreman originally reported a verdict of guilty pertaining to the charge of possession of narcotic paraphernalia. Your first report of not guilty has been re-

peated. Now the second time, the Court asked you following your first report whether after the Court had explained what the Clerk was doing on at least two occasions, you again reported not guilty. Is that your verdict?

EMMA WHITE: All I would like to say is guilty at first. I didn't quite get it exactly. I didn't understand it.

THE COURT: Do you know the difference between guilty and not guilty?

EMMA WHITE: Yes, I do.

THE COURT: What does guilty mean?

EMMA WHITE: Guilty means—you know, the committing of a crime of these that he was guilty of.

THE COURT: Can you explain why on two occasions you said "not guilty"?

EMMA WHITE: Well, I just didn't understand first, and I didn't hear it clearly. I am sorry. * * *

THE COURT: Finally, Mrs. White, with respect to the charge of possession of narcotic paraphernalia, what is your verdict?

EMMA WHITE: Guilty.

 It is now well settled that the verdict of a jury must be arrived at freely and fairly and that the validity of a unanimous verdict is not dependent on what the jurors agree to in the jury room, but rather upon what is unanimously reported in open court. The reason for this is that any juror, when polled, may dissent from a verdict to which he has agreed in the jury room and, when he does, the jury should either be discharged or returned to the jury room for further deliberation. Certainly, this is the procedure contemplated by GS Crim.Rule 31(d). In re Pearson, D.C.App., 262 A.2d 337 (1970);

Matthews v. United States, D.C.App., 252 A.2d 505 (1969). See also Bruce v. Chestnut Farms-Chevy Chase Dairy, 75 U.S. App.D.C. 192, 126 F.2d 224 (1942).

In reversing the judgment of conviction in In re Pearson, *supra*, this court said in 262 A.2d at 339:

> * * * It is obvious that if *one* juror opposes the announced verdict, the jury must be discharged or returned for more deliberation. In the instant case, despite the fact that the first juror polled announced "Not guilty", the jury poll was continued through all other 11 jurors. We have grave doubt about the desirability of such a practice. All that is accomplished by continuing the poll is to ascertain the numerical division of a jury in disagreement. * * *[1]

Here, when juror No. 1 stated, with respect to the charge of possession of implements of crime, that her verdict was "not guilty," the trial judge should have been alerted (and, no doubt, he was) that there might not be unanimity in the verdict. Perhaps it was for this reason that the trial judge interrupted the polling of the jury and, with particular reference to juror No. 1, explained the question and the charge on which the jury foreman had announced a verdict of guilty. When, therefore, juror No. 1 again registered a "not guilty" verdict, the court's "identification" and "interrogation" of that juror which followed, though well intended, served no "* * * 'useful purpose' outweighing the potential harm in continuing the poll. The coercive atmosphere created by revealing a split, in the jury room, decried in *Brasfield*, is magnified when it occurs in open court. * *" In re Pearson, *supra* (footnote omitted).

The Government, in seeking affirmance of the judgment of conviction, relies upon Williams v. United States, 136 U.S.App. D.C. 158, 419 F.2d 740 (1969), and United States v. Brooks, 137 U.S.App.D.C. 147,

---

1. *Cf.* Brasfield v. United States, 272 U.S. 448, 47 S.Ct. 135, 71 L.Ed. 345 (1926). *See also* Williams v. United States, 136 U.S.App.D.C. 158, 419 F.2d 740 (1969); United States v. Brooks, 137 U.S.App. D.C. 147, 420 F.2d 1350 (1969).

420 F.2d 1350 (1969). These cases, however, are distinguishable on their facts.

The court in *Williams,* while sanctioning the trial judge's interrogation of a dissenting juror, noted that there were substantial reasons for the juror's apparent confusion, saying:

> The confusion from the switching of defendants was compounded by the obvious fact that both judge and jurors were having a hard time hearing the deputy clerk. Further confusion was provided by the necessity—because the clerk could not hear the juror's answer—for repeating the question * * *. [136 U.S.App. D.C. at 163, 419 F.2d at 745.]

In *Brooks,* after the juror registered a dissent, the court halted the polling and suggested to defense counsel that "I can throw that count out if you want me to," and defense counsel replied, "I would say yes, *but I would ask to have the rest of the jury polled."* [137 U.S.App.D.C. at 149, 420 F. 2d at 1352.]

Here, unlike *Williams* where there were multiple defendants and counts, there is only *one* defendant and *one* charge on which the jurors were being polled and the record does not reflect that the court encountered difficulty in hearing the juror's response. These facts, in our opinion, weaken considerably the Government's argument that the dissenting juror was confused by the charge as was the juror in the *Williams* case.

Here, unlike *Brooks, supra,* there was no request by defense counsel to proceed with the poll after the juror's dissent was registered and, as this court said in *Pearson,* to continue the poll in the absence of such a request is error.

There is, of course, a clear distinction between actions of a trial judge to obtain clarity in place of confusion and actions that produce a likelihood that a juror has been coerced. Williams v. United States, *supra.* Because, in this case, the repeated efforts of the trial judge to obtain a unanimous verdict may have had a coercive effect upon the dissenting juror, "we cannot say with assurance that the jury freely and fairly arrived at a unanimous verdict." Matthews v. United States, D.C.App., 252 A.2d 505, 507 (1969).

We conclude, therefore, that it was prejudicial error to accept a verdict under the circumstances disclosed by this record.

Reversed and remanded for a new trial.