**John MORGAN, Jr., Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 9735.**

District of Columbia Court of Appeals.

Argued Feb. 5, 1976.

Decided Sept. 30, 1976.

**1000**

Leroy Nesbitt, Washington, D.C., for appellant.

Raymond J. Coughlan, Jr., Asst. U.S. Atty., Washington, D.C., with whom Earl J. Silbert, U.S. Atty., John A. Terry, James F. McMullin and Eugene M. Propper, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before REILLY, Chief Judge, and HARRIS and MACK, Associate Judges.

MACK, Associate Judge.

Appellant, a Metropolitan Police Officer, was convicted by a jury of murder in the first degree (D.C.Code 1973, § 22–2401) and two counts of assault with intent to kill while armed.[1] (*Id.* §§ 22–501, –3202). We reject his contention that his conviction should be reversed because of errors allegedly committed by the trial court—essentially, in failing to give requested instructions, in failing to declare a mistrial for lack of a unanimous verdict, and in admitting testimony claimed as a privileged communication.

I

At trial, the government's evidence revealed that in 1974, appellant's wife of nine years left the home they were buying after she had been severely beaten by appellant, threatened, and ordered to take their two small sons and "get out." Mrs. Morgan (who was working at the time) moved to an apartment at an address undisclosed to her husband, and transported her children every day to her parents' home for care. On the afternoon of November 7, 1974, appellant appeared unannounced at the door of the apartment, and over the objection of his wife (who was alone), entered. After some conversation, appellant, without warning, grabbed his wife, tied her arms behind her back with clothing, thrust a scarf into her mouth, and choked her until she lapsed into a state of unconsciousness. When she regained consciousness, it was growing dark outside and she was lying on her bed, bound and gagged. Appellant, who was kneeling on her chest, was saying that he had to kill her to prevent her from reporting his actions, that he was not going to lose his job, and that he was not going to jail. As she moaned, appellant removed the gag and Mrs. Morgan promised that no one would ever know, if he would free her.

Thereafter, Mrs. Morgan was forced to enter appellant's car for the purported purpose of taking her to the home of her sister, who was expecting her. Instead, the two eventually arrived at the home of Mrs. Morgan's parents, the Pinkneys (after aimless driving, a traffic stop by a park policeman which caused appellant to warn his wife that he would kill her if she said one word, and an unsuccessful attempt by appellant to pull her from the car into a darkened park). At the home of his in-laws, appellant began to prepare his two small sons for departure. When Mrs. Morgan begged him not to take the children, he warned, "If you ever want to see them again, you better not say anything," and "If you say one word I'll shoot your father right where he sits." Mrs. Morgan remained quiet until after appellant depart-

---

1. Appellant was sentenced to life imprisonment for the murder and concurrent terms of 10 to 30 years for the assaults.

ed with the children. She then broke down, told her parents of the attack, showed them her cut lips, swollen mouth, and finger-marked throat, and then called the police.

A police official, Lieutenant Bowles, responded to the call and arrived at the Pinkney home. He called appellant and asked him to report to the precinct in connection with a complaint by his wife. A few minutes later, appellant called the Pinkney home and told his wife she should not have called his superiors and that he was bringing the children back.

When appellant arrived at the Pinkney home carrying his baby in his left arm, he was met outside by Lt. Bowles. Appellant appeared calm and told his superior officer that he merely wished to take the children inside to his wife before going to the precinct. Lt. Bowles and the older child followed appellant at a short distance behind into the house where many of the Pinkney relatives were gathered. As appellant entered the door, Mrs. Morgan arose from a couch and reached toward appellant for the baby; appellant drew his service revolver, stated "I told you," and shot her twice. He dropped the baby, spun around in a semi-crouching position and shot Lt. Bowles twice. As Mr. Pinkney descended from upstairs, appellant shot him at virtually point blank range. When the elderly, falling victim reached out to appellant for support, appellant hit him in the head repeatedly with the butt of the gun until the victim released his grip. Other family members fled as appellant reloaded his gun. Mr. Pinkney died; Mrs. Morgan and Lt. Bowles were seriously wounded.

Appellant, in his own defense, testified that he loved his wife and was attempting a reconcilation. He said that he had "blacked out," first when he assaulted his wife in the apartment, and again when he delivered his children back to the home of his in-laws. He said that he remembered no details of the shooting.

## II

In this court appellant argues, first, that it was erroneous for the trial court to instruct the jury on first and second-degree murder and refuse to instruct on manslaughter as a lesser-included offense thereof.

 Manslaughter is the unlawful— that is, unexcused—killing of a human being, without malice. *United States v. Alexander,* 152 U.S.App.D.C. 371, 471 F.2d 923, *cert. denied,* 409 U.S. 1044, 93 S.Ct. 541, 34 L.Ed.2d 494 (1972). It is a lesser-included offense of second-degree murder; yet a defendant is entitled to a manslaughter instruction only where there is some evidence that might bring the crime within the grade of the lesser offense. *See Pendergrast v. United States,* D.C.App., 332 A.2d 919 (1975); *United States v. Alexander, supra; United States v. Sinclair,* 144 U.S.App.D.C. 13, 444 F.2d 888 (1971); *United States v. Comer,* 137 U.S.App.D.C. 214, 421 F.2d 1149 (1970). Our law recognizes as such evidence facts showing adequate provocation by the victim causing the defendant to strike out in the sudden heat of passion. *See Alexander, supra* at 391, 471 F.2d at 943; *Austin v. United States,* 127 U.S.App.D.C. 180, 382 F.2d 129 (1967); *Hart v. United States,* 76 U.S.App.D.C. 193, 130 F.2d 456 (1942).

 As appellant himself recognizes, the facts of this case do not present classic circumstances supporting an instruction for manslaughter. He admittedly presented no evidence of provocation and no facts of provocation can be inferred which would have given him a scintilla of a defense against murder. Appellant argues, however, that evidence of his "emotional strain" (supplied only by his own testimony) defeats the prosecution's showing of malice. This presents a different issue—one essentially the same as his claim that the jury should have been instructed to consider his "state of mind" with regard to the question of malice. We conclude that this

argument does not merit serious attention under the law or the circumstances of this case.[2] Significantly here, the jury went beyond a finding of malice and necessarily found as a fact that appellant had committed murder after premeditation. On this record we can say, without much in the way of speculation, that the jury would have ignored any instruction on manslaughter. *See Belton v. United States,* 127 U.S.App.D.C. 201, 208, 382 F. 2d 150, 157 (1967).

### III

Appellant's next argument is that the trial court erred in not declaring a mistrial or sending the jury back for further deliberation when, during a poll on the murder count, the following transpired:

THE DEPUTY CLERK: Juror No. 2?

JUROR NO. 2: Not guilty.

THE COURT: I didn't understand you?

JUROR NO. 2: Guilty.

The polling then proceeded without further interruption. The record shows that neither the judge nor the U.S. Attorney had actually heard the first answer given by the juror, but did hear the latter "guilty" verdict.

■ One of the cornerstones of our system of jurisprudence is that a verdict of guilty in a criminal case may stand only if freely given and unanimous. *See Andres v. United States,* 333 U.S. 740, 68 S.Ct. 880, 92 L.Ed. 1055 (1948); *Jones v. United States,* D.C.App., 273 A.2d 842 (1971); *In re Pearson,* D.C.App., 262 A.2d 337

(1970); *Matthews v. United States,* D.C. App., 252 A.2d 505 (1969); *Solar v. United States,* D.C.Mun.App., 86 A.2d 538 (1952); *Williams v. United States,* 136 U. S.App.D.C. 158, 419 F.2d 740 (1969). It is for this reason that, when a juror's equivocation during the polling process shows a lack of unanimity, the trial court should either instruct the jury to return for further deliberation or discharge the jury. *Matthews, supra* at 506. In this case, however, we find no showing of an inability to agree on a verdict nor a lack of vigilance on the part of the trial court that would require reversal.

■ The polling in question followed an answer by all jurors in unison confirming a verdict of guilty. The juror's recorded answer of "not guilty" was inaudible to the court and government counsel. Coming as it did, and immediately corrected, it well might have reflected, as the government has suggested, a slip of the tongue or a mistranscription. In any event, the juror's response does not show any likelihood of ambiguity, nor of confusion (*cf.· Williams, supra*); nor did the response appear conditional (*cf. Matthews, supra; United States v. McCoy,* 139 U.S.App.D.C. 60, 429 F.2d 739 (1970)). The "guilty" announcement came immediately and unequivocally in answer to the court's inquiry relative to understanding—an inquiry completely consistent with the fact that there was difficulty in hearing. The court made no further inquiry nor comment (*cf. Jones, supra*). There was no possibility of coercion, and defense counsel (who subsequently requested a mistrial but not retirement for further deliberation) did not suggest coercion.[3] Under these circumstances, neither a

---

2. The argument is that the trial court erred in refusing to instruct that the jury could consider his stressful state of mind in determining whether he was capable of forming specific intent and whether there was malice, deliberation and premeditation. Yet he chose not to claim insanity nor did he offer expert psychiatric evidence. *See Bethea v. United States,* D.C.App., 365 A.2d 64 (1976), and cases cited therein.

3. Much more extensive participation by a trial court in attempting to clarify verdicts has been upheld against a claim that it was objectionable as having been intended or calculated to affect judgment. *See Williams v. United States, supra* at 164, 419 F.2d at 746. *Cf. also Matthews v. United States, supra,* where a juror, who obviously had not made up her mind, was directed to answer "guilty" or "not guilty."

mistrial nor return for deliberation was required.

## IV

Finally, appellant argues that the trial court erroneously allowed into evidence, in violation of the marital privilege, testimony by his wife as to appellant's assaults and threats upon herself as well as the threat upon her father. Even if we assume that appellant has preserved this question for review by an appropriate, timely, and specific objection [4] (*see United States v. Lewis,* 140 U.S.App.D.C. 40, 46, 433 F.2d 1146, 1152 (1970)), his contentions are without merit.

D.C.Code 1973, § 14–306, defines statutorily the marital privilege in this jurisdiction as follows:

(a) In civil and criminal proceedings, a husband or his wife is competent but not compellable to testify for or against the other.

(b) In civil and criminal proceedings, a husband or his wife is not competent to testify as to any confidential communications made by one to the other during the marriage.

▮▮▮▮ The plain meaning of this statute is clear; a wife is competent to testify to anything except a "confidential communication." An assault is hardly a "communication" and it is most certainly not a "confidential" one. *See United States v. Burks,* 152 U.S.App.D.C. 284, 470 F.2d 432 (1972); *United States v. Lewis, supra; United States v. Mitchell,* 137 F.2d 1006 (2d Cir. 1943), *cert. denied,* 321 U.S. 794, 64 S.Ct. 785, 88 L.Ed. 1083 (1944).

▮▮▮▮ Appellant fares no better with regard to his argument as to privileged threats. Even under ancient common law marital disabilities, testimony as to communications relative to personal injuries inflicted against a spouse would have been admissible under the recognized exception of Necessity.[5]

▮▮▮▮ The purpose of Congress in enacting Section 14–306 was to remove, not increase, grounds of incompetency. *See Halback v. Hill,* 49 App.D.C. 127, 130, 261 F. 1007, 1010 (1919). We submit that these verbal assaults, in and of themselves, were so directly a part of the criminal offenses as to admit of no confidential character. Moreover the threat against Mrs. Morgan's father, made in the presence of another family member, was obviously not a confidential communication. *See People v. Torres,* 18 Ill.App.3d 921, 310 N.E.2d 780 (1974).

We have examined appellant's remaining contentions and find no error.

*Affirmed.*

---

4. The transcript references to which we are referred show that appellant objected generally to introduction of extensive evidence of past assaultive conduct without reference to the marital privilege. After having successfully limited the evidence in this regard his cross-examination elicited yet further incriminating past conduct.

5. At common law, upon grounds of public policy—keeping the family together and making the marital relationship impenetrable—a husband and wife were not permitted, even by consent, to give evidence for or against each other, or to testify, even after termination of the marriage by death or divorce, to private communications which took place during the marriage. *See Hopkins v. Grimshaw,* 165 U.S. 342, 17 S.Ct. 401, 41 L.Ed. 739 (1897). But one of the exceptions to which this rule has always been subject is that of Necessity, which encompasses the case of testimony by one spouse in the prosecution of the other for infliction of personal injuries. *See United States v. Walker,* 176 F.2d 564, 568 (2d Cir.), *cert. denied,* 338 U.S. 891, 70 S.Ct. 239, 94 L.Ed. 547 (1949); *United States v. Mitchell, supra* at 1008; McCormick on Evidence §§ 66, 84 (2d ed. 1972).