THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
JEFF CHANDLER, Defendant-Appellant.

First District (5th Division)    No. 78-1995

Opinion filed March 14, 1980.—Supplemental opinion filed on denial of rehearing
October 10, 1980.

Ralph Ruebner and Gary Jay Ravitz, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Mary Ellen Dienes, and James L. Alexander, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE MEJDA delivered the opinion of the court:

Defendant was charged by information with the offense of pandering. (Ill. Rev. Stat. 1975, ch. 38, par. 11—16(a)(2).) He was convicted by a jury and, following a presentence investigation and a sentencing hearing, was sentenced to prison for not less than one year nor more than three years, the maximum sentence for the offense. Defendant raises two issues on appeal, contending that: (1) he was denied a fair and impartial trial by jury because the trial court continued to poll the entire jury after one juror dissented from the verdict; and (2) the trial court abused its discretion in imposing sentence in that it refused to hear opinion evidence of defendant's character and it considered unverified evidence of prior convictions. We affirm the conviction and sentence.

Defendant does not question the sufficiency of the evidence to convict, raising the issue of reasonable doubt solely in regard to the unanimity of the jury, and we therefore will not recount all of the evidence which led to his conviction.

When the jury returned with its verdict, it was polled at the request of defendant. Two jurors dissented from the verdict and a recess was taken during which the trial judge held an *in camera* conference with the two prosecuting attorneys and the defense attorney. Following the conference, the court questioned the dissenting jurors as to whether they had been coerced into reaching the guilty verdict. Upon receiving a negative response from both jurors, the jury was returned for further deliberations, with new verdict forms. The jury again returned a guilty verdict which a poll disclosed to be unanimous. The verdict was accepted and judgment was entered.

After the jury was dismissed, defendant made motions for a new trial and for judgment notwithstanding the verdict. The case was continued for five weeks to allow time for presentence investigation and for the preparation of written motions.

The post-trial hearing consisted of argument of defendant's six-point motion for new trial and of evidence in aggravation and mitigation prior

to sentencing. Defendant's motion for new trial was denied, including his claim that the court erred in letting the jurors continue their deliberations instead of ordering a mistrial. In sentencing defendant to one to three years in the penitentiary, the court considered the entire presentence report, excluding some juvenile records of defendant's brother as well as arrest reports. The court stated that it also considered the nature and circumstances of the offense and defendant's employment record and prior convictions. It did not allow defense counsel to express his own opinion of defendant's character.

Defendant was sentenced to one to three years in prison and this appeal followed.

OPINION

## I.

Defendant first contends that he was denied a fair trial when the court continued to poll the entire jury after discovering that one of the jurors dissented from the verdict. Defendant maintains that the trial court's actions isolated the dissenter and created a coercive atmosphere that thereby raises a reasonable doubt as to the unanimity of the verdict. He urges that a mistrial should have been declared at that point. The State alternatively contends: (1) that defendant has waived his right to appeal on this issue because he made no objection to the continuation of the poll at trial and did not include the continuation of the poll of the jury in his motion for new trial; and (2) that the trial court's actions in allowing the jury to continue its deliberations were proper.

Citing *People v. Pickett* (1973), 54 Ill. 2d 280, 296 N.E.2d 856, the State maintains that defendant failed to raise the continuation of the jury poll in the motion and has therefore waived the issue. We disagree. In *Pickett*, defense counsel was absent when the verdict was received and filed, and the jury was not polled. When the right to counsel and the right to poll the jury were raised on appeal, our supreme court held the issues waived because they had not been included in the motion for new trial. Here, the issue was included in the motion. While not specifically mentioning the continuation of the polling of the jury in his motion, defendant stated the same ground in other words by citing both the trial court's refusal to declare a mistrial after the two jurors dissented and its subsequent ordering of the jury to continue its deliberations.

The State also points out that no objections were made to the court's action until after the jury's verdict had finally been accepted. Two jurors, the third and the 10th, dissented from the verdict when the jury was polled. In each instance, the court instructed the clerk to continue polling the jury and in neither instance did defendant object. The court then called an *in camera* conference with the prosecutors and defense counsel.

The discussion was off the record, after which the court stated: "All right, gentlemen, we are agreed that this is what we are going to do, is that correct?" Defense counsel replied, "Yes." The court again asked, "Is that the agreement?" to which the State's Attorney responded, "That is the agreement."

The court reconvened and, in the presence of the jury, defendant and counsel, announced that the earlier finding of guilty was not the jury's verdict. After the announcement, the following colloquy between the court and the dissenting jurors occurred:

"THE COURT: Now, Mrs. Friedman, were you coerced in any manner in arriving at, or placing your signator [*sic*] as you did first on the verdict?

I assume that you know what the word 'coerced' means?

JUROR FRIEDMAN: May I speak freely?

THE COURT: Yes, Ma'am.

JUROR FRIEDMAN: No, I was not coerced. And had I not been questioned when I came into this courtroom I would have let my signature stand and my verdict stand.

THE COURT: When you were questioned when you came into the courtroom?

JUROR FRIEDMAN: Had I not been quetioned.

THE COURT: By whom?

JUROR FRIEDMAN: By you, sir.

THE COURT: Well, I have to ask the questions.

JUROR FRIEDMAN: I know, I am aware of that.

THE COURT: Well then I don't understand.

JUROR FRIEDMAN: I am sure you don't. I will see if I can explain it.

MR. SPIVACK [assistant state's attorney]: Before Mrs. Friedman says anything I think we have a problem depending on what, I don't know what she is going to say.

THE COURT: All right.

The record shows that the questions that I asked, which were of the Jury, which were asked of you, the previous questions that were asked of you, we will let that ride as it is.

Nevertheless notwithstanding that, the verdict that we received here is not the verdict of this Jury.

Mrs. Williams, I believe it is Mrs. Williams, were you in any manner coerced in arriving at your finding and subscribing your name to the verdict?

JUROR WILLIAMS: No, sir."

The court then returned the jury to its room for further deliberation with no objection by defendant. A new guilty verdict form was prepared and

sent to the jury, but the court gave the jury no further instructions. The original verdict form was marked as Exhibit 1, to be included in the record, the court indicating it was not the jury's verdict.

Subsequently, the jury returned and informed the court that it had found the defendant guilty of pandering. Defendant again requested a poll, and each juror indicated assent to the verdict. Still, defendant registered no objection. It was not until after the jury was dismissed that defendant indicated that he would be making a motion for new trial and a judgment notwithstanding the verdict, although the grounds of those motions were not specified at the time.

In *People v. Herron* (1975), 30 Ill. App. 3d 788, 332 N.E.2d 623, the court noted the necessity of a timely objection or motion if a party seeks to attack the unanimity of a verdict because of a juror's response during a poll of the jury. In *Herron*, although the defendant neither raised an objection at trial nor included the issue in his motion for new trial, the court nevertheless resorted to its discretionary powers and decided to consider the merits of the appeal. In *People ex rel. Paul v. Harvey* (1972), 9 Ill. App. 3d 209, 292 N.E.2d 124, this court found that there was no waiver where the defendant sought to attack the unanimity of the jury's verdict in spite of the defendant's failure to object at trial to the acceptance of the verdict. The court rejected the State's contention of waiver because the jury had been polled at defendant's request in the first place.

■■ While neither case is directly on point and the issue here goes beyond the question of unanimity in accepting the jury's first verdict, albeit an unclear one, we will consider the issue on its merits. The motion for new trial adequately raised the issue in a timely fashion and, notwithstanding the apparent acceptance by defendant of the trial court's actions as they occurred, this case is sufficiently analogous to *Herron* to allow us to exercise our discretion under Supreme Court Rule 615(a) and consider the issue as raised by defendant. Ill. Rev. Stat. 1977, ch. 110A, par. 615(a).

Turning, then, to the merits of the issue, we note that defendant contends that this case presents a question of first impression and therefore relies exclusively on cases from other jurisdictions to support his position. His primary authority comprises two cases from the United States Supreme Court: *Burton v. United States* (1905), 196 U.S. 283, 49 L. Ed. 482, 25 S. Ct. 243, and *Brasfield v. United States* (1926), 272 U.S. 448, 71 L. Ed. 345, 47 S. Ct. 135. Both cases are distinguishable and neither is applicable here.

Both *Burton* and *Brasfield* involved juries which were brought into the court during their deliberations because they were unable to agree. The trial judges inquired as to the numerical division of the juries, without asking how many stood for conviction or acquittal. The subsequent

conviction was reversed on other grounds in *Burton*, although the court condemned the trial court's practice in *dictum* "because we cannot see how it may be material for the court to understand the proportion of division of opinion of the jury" (196 U.S. 283, 307-08, 49 L. Ed. 482, 491, 25 S. Ct. 243, 250) and because the court feared undue and improper influence on the jurors. In *Brasfield*, the practice of mid-deliberation inquiry was specifically held to be grounds for reversal, although the inquiry had apparently not been properly preserved for review. 272 U.S. 448, 450, 71 L. Ed. 345, 346, 47 S. Ct. 135, 135-36.

In contrast to *Burton* and *Brasfield*, the instant case involves a post-verdict poll of the jury rather than an interruption of its deliberations to determine the jury's progress. Furthermore, *Brasfield* also included the giving of an *Allen* charge to the jury (*Allen v. United States* (1896), 164 U.S. 492, 41 L. Ed. 528, 17 S. Ct. 154), and it has been indicated that it was the combination of the inquiry as to numerical division with the giving of the *Allen* charge that led to the reversal in *Brasfield* (*United States v. Rogers* (4th Cir. 1961), 289 F.2d 433). Finally, it was recently held that *Brasfield* is not controlling in this State because the decision was based on the court's supervisory powers rather than on the interpretation of a constitutional question. (*People v. Kirk* (1979), 76 Ill. App. 3d 459, 394 N.E.2d 1212.) In *Kirk*, the court adhered to the holdings of *People v. Golub* (1929), 333 Ill. 554, 165 N.E. 196, and *People v. Duszkewycz* (1963), 27 Ill. 2d 257, 189 N.E.2d 299, that mid-deliberation inquiries into the status of the jury's determination do not constitute reversible error absent a showing of prejudice.

■■ The essence of defendant's argument is that the continuation of the poll after the third juror dissented was prejudicial because it isolated the dissenting jurors and resulted in pressure from the trial court. The court should have immediately sent the jury back, he urges, for there was no purpose in continuing the poll once one dissenting juror was discovered and the possibility of harm to defendant was great. We disagree.

No court in this State has ever held that it is error to continue the poll after discovering a dissenting juror, nor is the questioning of the dissenter improper of itself. On the contrary, it is apparent that the trial court has the duty to continue the poll and to fully inquire of each juror as to whether he concurs in or dissents from the verdict. In *People v. Kellogg* (1979), 77 Ill. 2d 524, 397 N.E.2d 835, our supreme court discussed at length both the purpose and manner of conducting a jury poll. It stated:

> "When a jury is polled, each juror should be questioned individually as to whether the announced verdict is his own. The poll should be conducted so as to obtain an unequivocal expression from each juror. (ABA Standards, Trial by Jury, sec. 5.5 (1968).) The very purpose of the formality of polling is to afford the juror,

before the verdict is recorded, an opportunity for 'free expression unhampered by the fears or the errors which may have attended the private proceedings' of the jury room. (8 Wigmore, Evidence, sec. 2355, at 717 (rev. ed. 1961).) In conducting the poll, each juror should be examined to make sure that he truly assents to the verdict. See Annot., 25 A.L.R.3d 1151 (1969)." (77 Ill. 2d 524, 527-28.)

The polling of the jury, then, requires that the entire jury be polled in order to provide each juror the opportunity to dissent from the verdict. If the court receives an answer from a juror indicating a possible dissent from the verdict, it must then ascertain the juror's present intent by giving the juror the opportunity to make an equivocal statement as to his present state of mind. (*People v. Kellogg; People v. Preston* (1979), 76 Ill. 2d 274, 391 N.E.2d 359.) The question of whether a juror has freely assented to the verdict is a factual one which is best left to the trial court (*People v. Kellogg; People v. Herron*), and the trial court's determination of the unanimity issue will be upheld unless it is clearly unreasonable (*People v. Preston* (1978), 60 Ill. App. 3d 162, 376 N.E.2d 299, *aff'd* (1979), 76 Ill. 2d 274, 391 N.E.2d 359; *People v. Herron*). The manner in which the poll and subsequent questioning are conducted is largely within the trial court's discretion, and the trial judge must be mindful of his influence over the jury and avoid influencing or coercing the juror. *People v. Kellogg.*

We find no evidence that the trial court here acted unreasonably. The situation here is markedly dissimilar from those in *People v. Kellogg* and *People ex rel. Paul v. Harvey* (1972), 9 Ill. App. 3d 209, 292 N.E.2d 124, in which the trial court's actions were found to be coercive. In *Kellogg*, each juror was asked, "Was this then and is this now your verdict?" The court received 11 affirmative responses and then entered the following colloquy with the remaining juror:

"THE CLERK: Susan M. Vesecky, was this then and is this now your verdict?

JUROR VESECKY: Yes. Can I change my vote?

THE COURT: The question is, was this then and is this now your verdict?

JUROR VESECKY: (No response.)

THE COURT: Was this then and is this now your verdict?

JUROR VESECKY: Yes, Sir."

(*Kellogg*, 77 Ill. 2d 524, 527.)

In *Harvey*, a juror had answered the court that the verdict "wasn't exactly" his. The court then asked if he had signed the verdict form. Upon receiving an affirmative response, the court said: "Then it's your verdict." (9 Ill. App. 3d 209, 210, 292 N.E.2d 124, 125-26.) In both *Kellogg* and *Harvey*, the trial court was reversed because the jurors had been

foreclosed from the opportunity to express any dissent, thus raising a doubt as to the unanimity of the juries. Unlike *Kellogg* and *Harvey*, the court's actions here in questioning the jurors were neither coercive nor intimidating. Both jurors were given the opportunity to dissent from the verdict, which they did. Accordingly, we find no error in the conduct of the poll itself.

■■ We also find no error in the trial court's returning the jury for further deliberations.

> "If the trial judge determines that any juror does dissent from the verdict submitted to the court, then the proper remedy is for the trial court, on its own motion if necessary, to either direct the jury to retire for further deliberations (*Martin v. Morelock* (1863), 32 Ill. 485), or to discharge it (ABA Standards, Trial by Jury sec. 5.5 (1968))." (*Kellogg*, 77 Ill. 2d 524, 528-29; accord, *Harvey*, 9 Ill. App. 3d 209, 211, 292 N.E.2d 124, 126-27.)

The trial court could therefore properly return the jury to continue its deliberations. Furthermore, the jury was not instructed further, and we find nothing in the record which indicates any coercion. As in *People v. Dordies* (1978), 60 Ill. App. 3d 621, 377 N.E.2d 245, the sitution here is in sharp contrast to the language of an *Allen* charge which instructs "the minority on the jury to re-evaluate their positions giving consideration to the fact that the majority of the jury who heard the same evidence have taken a different position." *People v. Prim* (1972), 53 Ill. 2d 62, 73, 289 N.E.2d 601, 608, *cert. denied* (1973), 412 U.S. 918, 37 L. Ed. 2d 144, 93 S. Ct. 2731.

The mere possibility of harm to the defendant is not a sufficient ground for holding that the jury poll was improper. The possibility of prejudice to the defendant exists in the trial of any case, and the isolation of dissenting jurors is attendant to every jury poll. By its very nature, the poll is a tool used to determine the unanimity of a verdict, and individual jurors who dissent from the verdict are necessarily set apart from their fellow jurors as soon as they express their dissent. These are risks to be weighed in deciding whether or not to request a poll. If the isolation and coercion of the jurors are to warrant a reversal, however, they must result from the court's own actions, not from the nature of the poll itself. Defendant has shown no action of the court which operated to his prejudice. Accordingly, the conviction is affirmed.

## II.

Defendant next contends that the trial court abused its discretion in sentencing defendant by considering purportedly unverified evidence of prior convictions and by refusing to allow defense counsel to state his opinion as to defendant's character.

The presentence investigation report showed that defendant had been charged with burglary in January 1974 and that the charge had subsequently been reduced and defendant sentenced to four months in the House of Correction. The report did not state the nature of the reduced charge, and defendant accordingly submits that the court based its sentence on unreliable and incomplete information. When it appeared that the reduced charge could not be exactly defined, the court stated that it "has to go on what it has at this time." The review of defendant's prior record continued, and the prosecutor noted that the presentence investigation report contained a report from the FBI, which showed that the conviction had been for criminal damage to property. The entire presentence report, including the FBI report, is part of the trial court record.

The use of such evidence, which may not necessarily be admissible at trial, has long been held proper for purposes of determining the nature and extent of a sentence (*People v. Adkins* (1968), 41 Ill. 2d 297, 300, 242 N.E.2d 258, 260), and the practice accords with the standards set out by the United States Supreme Court in *Williams v. New York* (1949), 337 U.S. 241, 93 L. Ed. 1337, 69 S. Ct. 1079.

Defendant's reliance on *People v. Crews* (1967), 38 Ill. 2d 331, 231 N.E.2d 451, and *People v. Hayes* (1973), 55 Ill. 2d 78, 302 N.E.2d 37, is misplaced. In *Crews,* our supreme court vacated a sentence which was based in part on statements made by defendant's 4½-year-old child and contained in a caseworker's report. While the court noted its previous holding in *People v. Mann* (1963), 27 Ill. 2d 135, 188 N.E.2d 665, *cert. denied* (1963), 374 U.S. 855, 10 L. Ed. 2d 1075, 83 S. Ct. 1923, that a court is not bound by the usual rules of evidence in hearings in aggravation and mitigation, it nevertheless required the courts to determine the accuracy of any information before accepting it and found that the trial court had not done so before accepting the child's statements. In *Hayes,* the supreme court remanded a case for resentencing after the trial court had accepted, over defendant's objections, statements of defendant's prior convictions which were read from an unidentified document that was not offered as evidence.

■ In the instant case, however, the source of information was identified, shown to be reliable and made a part of the record. Accordingly, the trial court's acceptance of it was not error.

■ Defendant's remaining contention pertains to the trial court's refusal to admit defense counsel's proffered testimony of his opinion of defendant's character. It is well settled that the character of a defendant is provable only by evidence of his general reputation and that a witness' personal opinion of that reputation is not competent evidence. (*People v. Lyons* (1954), 4 Ill. 2d 396, 122 N.E.2d 809; *People v. Willy* (1921), 301 Ill.

307, 133 N.E. 859.) We therefore conclude that defense counsel's testimony was properly rejected.

The record discloses no abuse of discretion in the sentencing of defendant. The court considered the full presentencing investigation report and all matters contained therein, including information on defendant, his personal life and interests. The court also stated that it considered defendant's employment and the nature and circumstances of the offense. The hearing in aggravation and mitigation thus considered the matters required by statute (Ill. Rev. Stat. 1977, ch. 38, par. 1005—4—1(a)), and we therefore find that imposition of the maximum sentence for pandering was proper.

For the foregoing reasons, we affirm the conviction and sentencing of defendant.

Affirmed.

SULLIVAN, P. J., and LORENZ, J., concur.

SUPPLEMENTAL OPINION ON DENIAL OF REHEARING

Mr. JUSTICE MEJDA delivered the opinion of the court:

Defendant seeks a rehearing in this matter contending that this court overlooked his two primary authorities, *In re Pearson* (D.C. 1970), 262 A.2d 337, and *Jones v. United States* (D.C. 1971), 273 A.2d 842, and also misapprehended the supreme court's opinion in *People v. Kellogg* (1979), 77 Ill. 2d 524, 397 N.E.2d 835. Although not cited in the original opinion, *Pearson* and *Jones* were considered by this court but were not found to be controlling. Initially we note that the decisions of foreign jurisdictions are not binding upon Illinois courts (see *City of Chicago v. Groffman* (1977), 68 Ill. 2d 112, 118, 368 N.E.2d 891, 894; *People v. Stansberry* (1971), 47 Ill. 2d 541, 544, 268 N.E.2d 431, 433, *cert. denied* (1971), 404 U.S. 873, 30 L. Ed. 2d 116, 92 S. Ct. 121), and therefore we need not adopt the approach taken by the District of Columbia Court of Appeals. *Pearson* stated that as soon as a poll of the jury reveals a dissenting juror, further polling is unnecessary and in the absence of a request by the defense is error. The court found that the proper response to a dissent is either to discharge the jury or to return it for more deliberation, since the continued polling only ascertains the numerical division of a jury which was condemned in *Brasfield v. United States* (1926), 272 U.S. 448, 71 L. Ed. 345, 47 S. Ct. 135. As noted in our original opinion, *Brasfield* involved an inquiry by the trial court about the numerical division of a deliberating jury, which was considered to have coercive tendencies upon the jurors. The *Pearson*

court found the reasoning in *Brasfield* to be equally applicable to the continuing jury poll and considered the coercive atmosphere created by the revelation of the juror's division to be magnified when it occurs in open court rather than in the jury room. Because of the continuation of the jury poll and for several other reasons, the *Pearson* court was unable to conclude that the jury had freely arrived at an unanimous verdict and reversed defendant's conviction and remanded the cause for a new trial. The court subsequently followed *Pearson* in *Jones.*

We cannot agree that the continuation of a jury poll after a dissenting juror is discovered brings coercive tendencies to bear merely because it reveals the numerical division of the jury. As noted in our original opinion, a jury poll by its nature separates any dissenting juror from the previously unanimous majority. If isolation of jurors produces the coercive tendency as feared in *Pearson*, then stopping the poll at the first dissent and isolating a single juror from the majority would bring more coercion to bear on that juror should further deliberations follow than if a continued poll had revealed further dissent as in the instant case.

Another factor which distinguishes both *Pearson* and *Jones* from the instant case is the fact that the dissenting juror in each case changed her vote in court in response to direct questioning by the court. As noted in *Kellogg*, such interrogation may have coercive effects on a dissenting juror. Unlike those cases, here the jury was allowed to return to the jury room for further deliberations free from any coercion of the court. The two dissenting jurors then joined the majority in returning the unanimous verdict of guilty and the court was so informed. We fail to find any coercion on the dissenting jurors and cannot agree that the continued polling of the jury established a coercive effect in and of itself. We therefore reject the rule in *Pearson* that the continued polling is *per se* impermissible.

Defendant also contends that we relied on overly broad dicta in *People v. Kellogg* (1979), 77 Ill. 2d 524, 397 N.E.2d 835, to support our conclusion and ignored other dicta which supports his position. We still find that *Kellogg* suggests that each member of the jury should be polled so that "an unequivocal expression from each juror" (*Kellogg*, at 528) is obtained and that the poll need not be stopped at the first dissent. In addition, although *Kellogg* limits the trial court's remedies upon discovery of dissent to either directing the jury to retire for further deliberation or to discharging it, we do not feel that those remedies prohibit the continuation of the poll prior to the remedial action. This is apparent when the purpose of the poll, which is to make sure that each juror truly assents to the verdict, is considered. As noted in our original opinion, the question of unanimity of a verdict is for the trial court, and that determination will be upheld unless clearly unreasonable. The instant

record does not show the trial court's acceptance of the second verdict to be unreasonable.

We did not overlook his primary authorities as defendant contends, nor do we find that *Kellogg* prohibits the continuation of the jury poll after a dissenting vote is discovered.

Accordingly, defendant's petition for rehearing is denied.

SULLIVAN, P. J., and LORENZ, J., concur.