Travis C. DORN, a/k/a Curt
D. Travis, Appellant,

v.

**UNITED STATES, Appellee.**

No. 98–CM–928.

District of Columbia Court of Appeals.

Submitted Nov. 1, 2001.

Decided April 18, 2002.

Lois R. Goodman, appointed by the court, was on the brief for appellant.

Kenneth L. Wainstein, United States Attorney at the time the brief was filed, and John R. Fisher, Thomas J. Tourish, Jr., and Kent Cassibry, Assistant United States Attorneys, were on the brief for appellee.

Before TERRY, STEADMAN, and SCHWELB, Associate Judges.

TERRY, Associate Judge:

Appellant was convicted of possession of marijuana with intent to distribute it. On appeal he contends that the trial judge committed plain error by continuing to poll the jury after the fifth juror indicated disagreement with the announced verdict. We agree and reverse.[1]

## I

On January 30, 1998, Officer Milton Norris of the Metropolitan Police was driving eastbound in the 900 block of Crittenden Street, Northwest. He pulled into an alley on the north side of the street in order to turn around and travel back in the opposite direction. As he entered the alley, he saw appellant and another man standing a short distance away. Appellant was holding a clear ziplock bag. When he saw the officer, he threw down the bag and began to run away, but Officer Norris' partner tackled him. Norris retrieved the bag, which contained fifty-six smaller bags, each of which contained marijuana.

Appellant testified that the bag recovered by Officer Norris did not belong to him. In addition, appellant's cousin, who was present at the time of the arrest, and a friend who had dropped appellant off near the alley both testified that appellant did not have any drugs in his possession that evening.

The jury began its deliberations at around 1:00 p.m. At 4:15 p.m. the jury sent a note to the judge stating that it was deadlocked and could not reach a verdict. In response, the judge sent a note back instructing the jurors to "keep working" and telling them that they could be excused for the day at 4:45 p.m. Deliberations resumed the next morning at 10:15 a.m., and at 12:05 p.m. the jury sent another note requesting clarification of the testimony of one of the police officers and inquiring about a lunch break. After lunch, at 1:50 p.m., the jury sent a final note indicating that it had reached a verdict.

In the courtroom, after the foreman said that the jury had found appellant guilty, defense counsel requested a poll of the jury. The court then told the jurors, "In response to the foreman's verdict, you are to either answer, if you agree, yes, and if not, say no when your seat number is called." Jurors in seats one through four responded "Yes" to the clerk's call. The juror in seat number five, however, responded "No." The judge then said, "Go on," and the clerk continued to call on the remaining jurors, all of whom answered "Yes" to the clerk's question. After the last juror voiced agreement with the announced verdict, the following discussion took place:

[1] Appellant also maintains that the trial court erred in one of its instructions to the jury. Because we reverse the conviction on another ground, we need not address this second claim of error.

THE COURT: All right. We do not seem to have a unanimous verdict here.

THE CLERK: Seat number 5.

THE JUROR: I misunderstood.

THE CLERK: Seat number 5, how do you find the defendant, guilty or not guilty?

THE JUROR: Yes, guilty.

THE CLERK; Guilty?

THE COURT: Ladies and gentlemen, the court wishes to thank you for the attention you have paid to this trial, and we commend your efforts on behalf of the District. You may be excused.

Defense counsel made no objection to the court's decision to continue the poll after juror number five said "No" or to anything that happened after that.

## II

 Now, represented by new counsel on appeal, appellant argues that the trial court erred in continuing to poll the jury after juror number five indicated that he did not agree with the verdict as announced by the foreman. Because trial counsel did not object to the continued polling of the jury, appellant must demonstrate plain error in order to obtain reversal. *See Lumpkin v. United States,* 586 A.2d 701, 704 n. 3 (D.C.), *cert. denied,* 502 U.S. 849, 112 S.Ct. 151, 116 L.Ed.2d 116 (1991). "Under the plain error standard, the error must be (1) obvious or readily apparent, and clear under current law; and (2) so clearly prejudicial to substantial rights as to jeopardize the very fairness and integrity of the trial." *Coates v. United States,* 705 A.2d 1100, 1104 (D.C.1998) (citations and internal quotation marks omitted); *see United States v. Olano,* 507 U.S. 725, 732–733, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). This court will reverse for plain error "only in exceptional circumstances where 'a miscarriage of justice would otherwise result.'" *Harris v. United States,* 602 A.2d 154, 159 (D.C.

1992) (en banc) (citation omitted). That standard, though it is very difficult to meet, is met in this case.

Jury polls are governed by Rule 31(d) of the Superior Court Rules of Criminal Procedure, which states:

> *Poll of jury.* After a verdict is returned but before the jury is discharged, the Court shall, on a party's request, or may on its own motion, poll the jurors individually. If the poll reveals a lack of unanimity, the Court may direct the jury to deliberate further or may declare a mistrial and discharge the jury.

The rule does not authorize the continuation of a poll after the poll "reveals a lack of unanimity." This court has repeatedly held that continued polling after a juror expresses disagreement with the announced verdict is error. *E.g., Kendall v. United States,* 349 A.2d 464, 466 (D.C. 1975); *Jones v. United States,* 273 A.2d 842, 845 (D.C.1971); *In re Pearson,* 262 A.2d 337, 339–340 (D.C.1970). We reiterate and re-emphasize that holding here.

In *Pearson* the first juror asked a clarifying question during the poll and then answered, "Not guilty," when the poll was resumed. The judge continued the poll, which revealed that all the other jurors had found the defendant guilty, and then sent the jury back to the jury room. Fifteen minutes later the judge recalled the jury, and, after the jury revealed that it was still divided 11–1, the first juror changed her vote. We reversed the conviction, noting that there was "grave doubt about the desirability" of continuing to poll jurors after a dissent was noted. *Id.* at 339.

In *Jones* the first juror responded, "Not guilty," when polled. The trial judge repeatedly questioned her about her verdict, but the juror said she understood the question and still found the defendant not guilty. The judge continued the polling,

and when all of the other jurors responded that they found the defendant guilty, the judge returned to questioning the first juror, who eventually changed her verdict. We held that "to continue the poll in the absence of ... a request [by defense counsel] is error." 273 A.2d at 845.

Finally, in *Kendall* the first juror revealed during a poll that she had found the defendant not guilty on one of the seven counts at issue. The judge clarified that he was asking about the first count of the indictment, and when the juror reiterated her position, the judge continued polling the rest of the jury as to all counts. When the whole jury had been polled, the judge returned to the first juror and asked her about the disputed count once again, and this time the juror responded that she found the defendant guilty. We reversed, holding that "the inevitable effect was to pressure the first juror to conform her vote to that of the majority." 349 A.2d at 466.

Acknowledging these precedents, the government nevertheless cites several other cases in which this court has given the trial judge some discretion to continue polling after a dissent in certain situations. *See Artis v. United States*, 505 A.2d 52, 58 (D.C.), *cert. denied*, 479 U.S. 964, 107 S.Ct. 464, 93 L.Ed.2d 409 (1986) (holding that it was not error to continue polling on counts not subject to dissent when there was a multi-count indictment); *Johnson v. United States*, 470 A.2d 756, 760 (D.C.1983) (affirming a conviction because "unspoken communicative factors play[ed] a large role" in understanding what a juror meant when she said, "Guilty, I guess"); *Ellis v. United States*, 395 A.2d 404, 408 (D.C. 1978), *cert. denied*, 442 U.S. 913, 99 S.Ct. 2830, 61 L.Ed.2d 280 (1979) (holding that it was not reversible error to continue polling the remaining jurors on all counts when the disputed count was later dismissed). Those cases are distinguishable

on their facts and thus, in our view, are inapposite here.

In *Ellis*, for example, the judge continued polling jurors eleven and twelve after juror number ten expressed disagreement with the announced verdict on one count of a multi-count indictment. On appeal, we stated:

> [T]he practical dictates of effective judicial administration require that we overturn a conviction only when "the inevitable effect [of continued polling] was to pressure the [dissenting] juror to conform her vote to that of the majority."
>
> ... Reversal is warranted only when the trial court abuses its discretion by conducting itself in a manner that infringes upon the exercise of the jurors' free will.

395 A.2d at 408 (citations omitted). *Ellis* is different from the instant case, however, because after the poll, but before the jury was sent back for further deliberations, the trial judge in *Ellis* granted the government's motion to dismiss the count on which there appeared to be a disagreement. We noted that "had the trial court not granted the government's motion to dismiss the contested count, and had the case been returned to the jury, we would have been faced with a situation in which coercion was more likely to have occurred as to the contested count had a verdict of guilty resulted." *Id.* at 408 n. 2.

The government also argues that this case is similar to cases in which a juror has equivocated or expressed confusion during a poll. In *Jackson v. United States*, 377 A.2d 1151 (D.C.1977), the first juror answered, "Not guilty," and then immediately corrected himself when asked the same question again. We ruled that there was no error because the juror corrected himself before the poll continued, and thus "no pressure to conform was brought to bear upon the juror." *Id.* at 1153 n. 4. In *Morgan v. United States*, 363 A.2d 999

(D.C.1976), *cert. denied,* 431 U.S. 919, 97 S.Ct. 2187, 53 L.Ed.2d 231 (1977), the second juror initially answered, "Not guilty." When the judge then said, "I didn't understand you," the juror responded, "Guilty." We found no error because "[t]he 'guilty' announcement came immediately and unequivocally in answer to the court's inquiry .…" *Id.* at 1003.

■ In the case at bar, although juror number five later claimed to have misunderstood the question, the trial judge—unlike the judges in *Jackson* and *Morgan*—made no attempt to clear up any possible confusion in the initial answer. Instead, the judge completed the poll before returning to juror number five and discovering the misunderstanding. Moreover, although the judge did not actively pressure or question the juror about his vote as the trial judges did in *Pearson, Kendall,* and *Jones,* the continued polling revealed juror five to be the lone dissenter and could well have pressured him into changing his vote. What the judge should have done was to stop the jury poll *immediately* as soon as juror number five said "No" in response to the clerk's question. The judge should then have sent the jury back to the jury room, with appropriate instructions, to deliberate further. If the juror's misunderstanding was genuine, it could easily have been resolved, either by the judge through careful questioning[2] or by fellow jurors after returning to the jury room. By allowing the poll to continue after the juror's dissent, the trial judge committed an error that was obvious and readily apparent under established law—in other words, "plain." *See Olano,* 507 U.S. at 734, 113 S.Ct. 1770.

The remaining issue is whether the error prejudiced appellant's substantial rights to such an extent that it jeopardized the fairness of the trial. We conclude that it did. The judge's actions created a real possibility of a coerced verdict, as we have held in several cases, such as *Kendall* and *Jones.*[3] Although it is not clear whether the juror's initial answer was the result of a misunderstanding of the question or true disagreement with the verdict, his answer was unequivocal and did not change until the contrary votes of all the other jurors had been disclosed, leaving him on the short end of an 11–1 split. Furthermore, the jury had reported that it was deadlocked on the previous afternoon. The fact that the jurors were having difficulty in reaching a unanimous verdict the day before should have signaled to the judge that juror number five's dissent might have been due to more than a misunderstanding. Under all the circumstances presented by this record, we are convinced that the risk of a coerced verdict was so great, and so plain under well-established case law, that appellant's conviction cannot stand.

We hold that the trial judge committed plain error when she continued to poll the jury after juror number five dissented from the verdict previously announced by the foreman. Appellant's conviction is therefore reversed, and the case is remanded for a new trial.

*Reversed and remanded.*

---

2. "[I]n certain circumstances during a poll, a trial judge may properly question a juror to determine if he is confused and … such questioning is not coercive." *Kendall,* 349 A.2d at 467 n. 5 (citation omitted).

3. *See Kendall,* 349 A.2d at 466; *Jones,* 273 A.2d at 844.